DURAY DEVELOPMENT, LLC v PERRIN

Docket No. 287722. Submitted February 3, 2010, at Grand Rapids. Decided April 13, 2010, at 9:05 a.m.

Duray Development, LLC, brought an action in the Kent Circuit Court against Carl Perrin, Perrin Excavating, LLC, and Outlaw Excavating, LLC, alleging breach of contract. Duray Development had entered into an excavation contract on September 30, 2004, with Perrin, Perrin Excavating, and KDM Excavating in which Robert Munger signed on behalf of Duray Development, Carl Perrin signed on behalf of himself and Perrin Excavating, and Dan Vining signed on behalf of KDM Excavating. On October 27, 2004, Duray Development and Carl Perrin entered into a new contract intended to supersede the September 30, 2004, contract. The new contract contained the same language and provisions as the earlier contract but was between Duray Development and Outlaw only, and Carl Perrin, Perrin Excavating, and KDM Excavating were not parties. Outlaw had been recently formed by Carl Perrin and Vining, who signed the new contract on behalf of Outlaw, holding themselves out to Duray Development as the owners and persons in charge of Outlaw. The two contracts were drafted because on September 30, 2004, Outlaw had not yet been validly formed and Duray Development did not want the excavation work to wait until Outlaw was formed. The October 27, 2004, contract was entered into once the parties thought that Outlaw was a valid limited liability company. After bringing its action, Duray Development discovered that Outlaw did not obtain a "filed" status as a limited liability company until November 29, 2004, and was therefore not a valid limited liability company when the second contract was executed. The trial court, Paul J. Sullivan, J., ruled in favor of Duray Development, finding that Carl Perrin was in breach of contract. Carl Perrin argued in a posttrial memorandum that he was not personally liable and that Outlaw was liable under the doctrine of de facto corporation. The trial court determined that the provisions of the Limited Liability Company Act, MCL 450.4101 *et seq.*, regarding when a limited liability company comes into existence and has powers to contract had superseded the de facto corporation doctrine and made it inapplicable to limited liability companies. Carl Perrin appealed.

The Court of Appeals *held*:

1. Carl Perrin did not preserve for appeal his argument that the doctrine of corporation by estoppel precluded Duray Development from arguing that he is personally liable. He did, however, preserve for appeal the de facto corporation issue.

2. The four elements for a de facto corporation require incorporators to have proceeded (1) in good faith (2) under a valid statute (3) for an authorized purpose and (4) to have executed and acknowledged articles of association pursuant to that purpose. There is no question that the elements other than the good-faith element were satisfied in this case. There is no evidence to suggest that Carl Perrin formed Outlaw in anything other than good faith. The trial court correctly concluded that all the elements of a de facto corporation were present in this case. The trial court erred by holding that the de facto corporation doctrine cannot apply to limited liability companies. The de facto corporation doctrine applies to Outlaw and, therefore, Outlaw, and not Carl Perrin, individually, is liable for the breach of the second contract.

3. The doctrine of corporation by estoppel may reasonably be extended to limited liability companies. The record clearly supports a finding of limited liability company by estoppel through the extension of the corporation by estoppel doctrine. However, the trial court did not clearly err by failing to raise sua sponte the issue of corporation by estoppel.

4. The record does not reflect that the trial court considered all the relevant factors in holding that the defendants were barred from calling witnesses because they failed to file a witness list within the time allotted. On remand, the trial court should consider the relevant factors and explain its determination on the record.

Reversed and remanded.

1. CORPORATIONS — LIMITED LIABILITY COMPANIES — LIABILITY OF MEMBERS.

Limited liability applies once a limited liability company comes into existence, and a member or manager is not liable thereafter for the acts, debts, or obligations of the company (MCL 450.4501[3]).

2. CORPORATIONS — CONTRACTS — CONTRACTING BEFORE CORPORATE EXISTENCE — LIABILITY.

A person who signs a contract on behalf of a company that is not yet in existence generally becomes personally liable on the contract; the company can become liable if, after the company comes into existence, it either ratifies or adopts the contract, a court determines that a de facto corporation existed at the time of the

contract, or a court orders that the corporation by estoppel doctrine prevented the opposing party from arguing against the existence of a corporation.

3. CORPORATIONS — DE FACTO CORPORATIONS — CORPORATIONS BY ESTOPPEL.

The de facto corporation and the corporation by estoppel doctrines are separate and distinct doctrines; the former doctrine allows a defectively formed corporation to attain the legal status of a corporation while the latter doctrine prevents a party who dealt with an association as though it were a corporation from denying its existence.

4. CORPORATIONS — DE FACTO CORPORATIONS.

A de facto corporation instantly comes into being when its incorporators have proceeded in good faith under a valid statute for an authorized purpose and have executed and acknowledged articles of association pursuant to that purpose; a de facto corporation is an actual corporation that, with respect to all the world except the state, enjoys the status and powers of a de jure corporation.

5. CORPORATIONS — LIMITED LIABILITY COMPANIES — DE FACTO CORPORATIONS — CORPORATIONS BY ESTOPPEL.

The doctrine of de facto corporation and the doctrine of corporation by estoppel apply to limited liability companies (MCL 450.4101 *et seq.*).

6. TRIAL — WITNESSES — FAILURE TO TIMELY SUBMIT WITNESS LISTS — SANCTIONS.

A trial court's decision to bar witness testimony after a party has failed to timely submit a witness list is reviewed for an abuse of discretion; the record should reflect that the trial court gave careful consideration to the relevant factors involved and considered all of its options in determining what sanction was just and proper in the context of the case.

*Schenk, Boncher & Rypma* (by *Frederick J. Boncher*) for Duray Development, LLC.

*Miller Johnson* (by *David J. Gass* and *Joseph J. Gavin*) for Carl Perrin.

Before: TALBOT, P.J., and WHITBECK and OWENS, JJ.

PER CURIAM. In this breach of contract action, defendant Carl Perrin appeals as of right the August 21, 2008 judgment following a bench trial in which the trial court found that Perrin was in breach of contract and owed damages to plaintiff, Duray Development, LLC, in the amount of $96,637.68. The judgment did not find defendants Perrin Excavating, LLC, or Outlaw Excavating, LLC, in breach of contract, so neither of those defendants are parties to this appeal.

We find no plain error in the trial court's failure to raise sua sponte the issue of corporation by estoppel. However, we reverse the judgment of the trial court that the de facto corporation doctrine cannot apply to limited liability companies, and we reverse the trial court's decision to bar defendants from calling witnesses. Accordingly, we remand for further proceedings in accordance with this opinion.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Duray Development is a residential development company whose sole member is Robert Munger. Munger's responsibilities were to locate and purchase property, and then work with engineering companies and municipalities to have the property zoned and fully developed for residential living. In 2004, Duray Development purchased 40 acres of undeveloped property called "Copper Corners," located at the intersection of 76th Street and Craft Avenue in Caledonia Township, Michigan.

On September 30, 2004, Duray Development entered into a contract with Perrin, Perrin Excavating, and KDM Excavating for excavating at Copper Corners. In that contract, Munger signed on Duray Development's behalf, Perrin signed on behalf of himself and Perrin Excavating, and Dan Vining signed on behalf of KDM Excavating.

On October 27, 2004, Duray Development and Perrin entered into a new contract, intended to supersede the September 30, 2004 contract. The new contract contained the same language and provisions as the earlier contract. However, the new contract was between Duray Development and Outlaw only, and Perrin, Perrin Excavating, and KDM Excavating were not parties. Outlaw was an excavation company that Perrin and Vining had recently formed. Perrin and Vining signed the new contract on behalf of Outlaw, and both held themselves out to Duray Development as the owners and persons in charge of the company. Although the parties did not execute the second contract until October 27, 2004, it was drafted on September 30, 2004, the same day the parties signed the first contract. Once signed, all parties proceeded under the contract as if Outlaw were the contractor for the Copper Corners development.

Two contracts were drafted because Perrin had not yet formed Outlaw at the time of the first contract. However, Duray Development did not want to wait for Perrin to finish forming the company before starting the excavation of Copper Corners. Therefore, the parties entered into the first contract on September 30, 2004, and then entered into the second contract once the parties thought Outlaw was a valid limited liability company.

Defendants began excavation and grading work pursuant to the contracts, but did not perform satisfactorily or on time. Duray Development then sued defendants for breach of contract. Defendants answered and filed a counterclaim against Duray Development, alleging that they performed the work according to the terms of the contracts and that Duray Development owed defendants approximately $35,000. Duray Devel-

opment later learned through discovery that Outlaw did not obtain a "filed" status as a limited liability company until November 29, 2004, and therefore Outlaw was not a valid limited liability company at the time the parties executed the second contract.[1]

Duray Development filed an amended complaint and obtained a default judgment because defendants failed to file an answer. Defendants then moved for entry of an order to set aside the default judgment. The trial court granted defendants' motion and set aside the default. But the trial court subsequently ruled that defendants would not be allowed to call any witnesses at trial because defendants had failed to provide a witness list by the deadline set forth in the scheduling order. After trial, the trial court ruled in favor of Duray Development, finding that Perrin was in breach of contract and owed $96,367.68 in damages to Duray Development.

In a posttrial memorandum, Perrin argued that he was not personally liable for Duray Development's damages. He asserted that, although Outlaw was not a valid limited liability company at the time of the execution of the second contract, Outlaw was nevertheless liable to Duray Development under the doctrine of de facto corporation. The trial court opined that if Outlaw were a corporation, then the de facto corporation doctrine most likely would have applied. However, the trial court concluded that the Limited Liability Company Act[2] "clearly and specifically provides for the time that a limited liability company comes into existence and has powers to contract" and therefore superseded the de

---

[1] According to the Limited Liability Company Act, MCL 450.4101 *et seq.*, a limited liability company does not exist until the state administrator endorses the articles of organization with the word "filed." MCL 450.4104(2) and (6).

[2] MCL 450.4101 *et seq.*

facto corporation doctrine and made it inapplicable to limited liability companies altogether. Perrin now appeals.

## II. PERRIN'S PERSONAL LIABILITY

### A. STANDARD OF REVIEW

Perrin argues that he was not personally liable because he signed the second contract on behalf of Outlaw. According to Perrin, even though Outlaw was not yet a properly formed limited liability company, the parties all treated the contract as though Outlaw was a properly formed limited liability company and, therefore, the doctrine of de facto corporation shielded Perrin from personal liability. He further argues that the doctrine of corporation by estoppel precluded Duray Development from arguing that he is personally liable.

The issue whether the doctrine of de facto corporation applies to Perrin requires us to consider the Limited Liability Company Act and the Business Corporation Act.[3] We review de novo questions of law, including questions regarding whether a statute applies and regarding interpretation of the statute.[4]

Despite his contention on appeal, Perrin did not preserve the issue of corporation by estoppel. And although Perrin argues on appeal that corporation by estoppel and de facto corporation are doctrines so closely related that raising one of them at trial preserves both on appeal, caselaw does not support such an argument. Perrin cites *PIM, Inc v Steinbichler Optical*

[3] MCL 450.1101 *et seq.*

[4] *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000); *Alex v Wildfong*, 460 Mich 10, 21; 594 NW2d 469 (1999).

*Technologies USA, Inc*,[5] in support of this point. But in that case, although this Court noted that the two doctrines were closely related, it never went so far as to support Perrin's argument regarding preservation of the issue. Further, the Michigan Supreme Court later vacated this Court's decision in that case.[6]

Therefore, because Perrin did not preserve the issue of corporation by estoppel, we will only review the issue for plain error.[7] Plain error occurs at the trial court level if (1) an error occurred (2) that was clear or obvious and (3) prejudiced the party, meaning it affected the outcome of the lower court proceedings.[8]

### B. THE LIMITED LIABILITY COMPANY ACT

The Limited Liability Company Act provides precisely when a limited liability company comes into existence. MCL 450.4202(2) provides that "[t]he existence of the limited liability company begins on the effective date of the articles of organization as provided in [MCL 450.4104]." MCL 450.4104(1) requires that the articles of organization be delivered to the administrator of the Michigan Department of Energy, Labor and Economic Growth (DELEG).[9] Under MCL 450.4104(2), after delivery of the articles of organization, "the ad-

---

[5] *PIM, Inc v Steinbichler Optical Technologies USA, Inc*, unpublished opinion of the Court of Appeals, issued September 4, 2001 (Docket Nos. 220053 and 222221).

[6] *PIM, Inc v Steinbichler Optical Technologies USA, Inc*, 468 Mich 896 (2003).

[7] *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999); *Veltman v Detroit Edison Co*, 261 Mich App 685, 690; 683 NW2d 707 (2004) (applying the unpreserved plain error standard to civil cases).

[8] *Carines*, 460 Mich at 763.

[9] See also MCL 450.4102(2)(a) and (f) (defining "administrator" and "department").

ministrator shall endorse[10] upon it the word 'filed' with his or her official title and the date of receipt and of filing[.]" And under MCL 450.4104(6), "[a] document filed under [MCL 450.4104(2)] is effective at the time it is endorsed[.]"

Once a limited liability company comes into existence, limited liability applies, and a member or manager is not liable for the acts, debts, or obligations of the company.[11] In contrast, a person who signs a contract on behalf of a company that is not yet in existence generally becomes personally liable on that contract.[12] However, a company can become liable if, (1) after the company comes into existence, it either ratifies or adopts that contract,[13] (2) a court determines that a de facto corporation existed at the time of the contract,[14] or (3) a court orders that corporation by estoppel prevented the opposing party from arguing against the existence of a corporation.[15]

In this case, Perrin signed the articles of organization for Outlaw on the same day as the second contract, October 27, 2004. Perrin then signed the October 27, 2004 contract on behalf of Outlaw. However, the DELEG administrator did not endorse the articles of organization until November 29, 2004. Therefore, pur-

---

[10] The Legislature amended both MCL 450.4104(2) and MCL 450.4104(6) after the date of the second contract to change the words "indorse" and "indorsed" to "endorse" and "endorsed." 2005 PA 218, effective January 1, 2006. The Legislature, however, did not amend the substantive portions of the subsections.

[11] MCL 450.4501(3).

[12] *Campbell v Rukamp*, 260 Mich 43, 46; 244 NW 222 (1932).

[13] *Id.*; *Henderson v Sprout Bros, Inc*, 176 Mich App 661, 673; 440 NW2d 629 (1989).

[14] *Tisch Auto Supply Co v Nelson*, 222 Mich 196, 200; 192 NW 600 (1923).

[15] *Estey Mfg Co v Runnels*, 55 Mich 130, 133; 20 NW 823 (1884).

suant to the Limited Liability Company Act, Outlaw was not in existence on October 27, 2004. And Outlaw did not adopt or ratify the second contract. Therefore, Perrin became personally liable for Outlaw's obligations *unless* a de facto limited liability company existed or limited liability company by estoppel applied.[16]

### C. DE FACTO CORPORATION AND CORPORATION BY ESTOPPEL

De facto corporation and corporation by estoppel are separate and distinct doctrines that warrant individual treatment. The de facto corporation doctrine provides that a defectively formed corporation—that is, one that fails to meet the technical requirements for forming a de jure corporation—may attain the legal status of a de facto corporation if certain requirements are met, as discussed later in this opinion. The most important aspect of a de facto corporation is that courts perceive and treat it in all respects as if it were a properly formed de jure corporation. For example, it can sue and be sued.[17] Often, as in this case, the status of the company is crucial to determine whether the parties forming the corporation are individually liable.[18]

Corporation by estoppel, on the other hand, is an equitable remedy and does not concern legal status.[19] The general rule is: "Where a body assumes to be a corporation and acts under a particular name, a third

---

[16] *Tisch Auto Supply*, 222 Mich at 200; *Estey Mfg*, 55 Mich at 133.

[17] *Tisch Auto Supply*, 222 Mich at 200; *Eaton v Walker*, 76 Mich 579, 586; 43 NW 638 (1889); *Henderson*, 176 Mich App at 672. The only exception is that the state may challenge its status. See *Newcomb-Endicott Co v Fee*, 167 Mich 574, 582; 133 NW 540 (1911); 6 Michigan Civil Jurisprudence, § 40, p 135.

[18] See, e.g., *Berlin State Bank v Nelson*, 231 Mich 463, 465; 204 NW 92 (1925).

[19] *Estey Mfg*, 55 Mich at 133; see also 6 Michigan Civil Jurisprudence, § 44, p 139.

party dealing with it under such assumed name is estopped to deny its corporate existence."[20] Like the de facto corporation doctrine, corporation by estoppel often arises in the context of assessing individual versus corporate liability. The purpose of the doctrine is so "that one who contracts with an association as a corporation is estopped to deny its corporate existence . . . so as to prevent one from maintaining an action on the contract against the associates, or against the officers making the contract, as individuals or partners."[21]

In sum, the de facto corporation doctrine allows a defectively formed corporation to attain the legal status of a corporation. The corporation by estoppel doctrine prevents a party who dealt with an association as though it were a corporation from denying its existence. Stated another way, the de facto corporation doctrine establishes the legal existence of the corporation. By contrast, the corporation by estoppel doctrine merely prevents one from arguing against it, and does nothing to establish its actual existence in the eyes of the rest of the world.

Despite their differences, the two doctrines are often discussed in tandem and the Supreme Court tends to collapse discussion of the two into a single blended analysis.[22] One reason that the two doctrines are often blended together is because a common fact pattern continually emerges in the caselaw: a party conducts business with an association that it believes to be a de jure corporation, but which was defective in some way

---

[20] *Estey Mfg*, 55 Mich at 133.

[21] 6 Michigan Civil Jurisprudence, § 47, p 140, citing *Lockwood v Wynkoop*, 178 Mich 388; 144 NW 846 (1914).

[22] See, e.g., *Tisch Auto Supply*, 222 Mich at 200-202; *Newcomb-Endicott Co*, 167 Mich at 581-582; *Eaton*, 76 Mich at 586-587; *Swartwout v Michigan Air Line R Co*, 24 Mich 389, 396 (1872).

and never truly incorporated. In that situation, both corporation by estoppel and de facto corporation naturally become relevant.

With that said, we, however, will consider each doctrine separately and deliberately. Each concept involves a separate set of factors, and caselaw suggests that one can exist without the other.[23] Moreover, a separate analysis is especially important in this case because Perrin preserved the issue of de facto corporation for appeal, but failed to preserve the issue of corporation by estoppel. Therefore, the two arguments are subject to different standards of review.

### D. THE DE FACTO CORPORATION DOCTRINE

The Michigan Supreme Court established the four elements for a de facto corporation long ago:

"When incorporators have [1] proceeded in good faith, [2] under a valid statute, [3] for an authorized purpose, and [4] have executed and acknowledged articles of association pursuant to that purpose, a corporation *de facto* instantly comes into being.[24] A *de facto* corporation is an actual

---

[23] See, e.g., *Lockwood*, 178 Mich at 391-392 (applying corporation by estoppel after assuming, but not concluding, the corporation was de jure); *City of Kalamazoo v Kalamazoo Heat, Light & Power Co*, 124 Mich 74, 82-83; 82 NW 811 (1900) (applying corporation by estoppel after declining to consider de facto corporation).

[24] Perrin acknowledges these elements in his brief, but he also quotes an opinion from the United States District Court for the Eastern District of Michigan to suggest different elements of the de facto corporation doctrine: " ' (1) a charter or statute under which a corporation with the powers assumed might have been organized; (2) a bona fide attempt to organize a corporation under such charter or statute; and (3) an actual use of the corporate powers.' " *Model Board, LLC v Board Institute, Inc*, 2009 WL 691891, *4; 2009 US Dist LEXIS 19822, *9-*10 (ED Mich, 2009). This case, in turn, cited *Tisch Auto Supply*, 222 Mich at 196, without providing a specific page reference. This language, however, is not found anywhere in *Tisch Auto Supply*. It is worth noting that the

corporation. As to all the world, except the State, it enjoys the status and powers of a *de jure* corporation."[25]

Here, there is no question that elements (2), (3), and (4) were satisfied. First, the Limited Liability Company Act is a valid statute that allows for limited liability companies in Michigan. Second, Perrin and Vining presumably formed Outlaw for the purpose of starting a new excavation company, which is an authorized purpose. Third, Perrin executed the articles of organization on October 27, 2004, the same day the parties executed the second contract.

It is less obvious whether the first element of the doctrine—good faith—was satisfied. There is little guidance in Michigan caselaw for a definition, or application, of this specific element. But in *Newcomb-Endicott Co v Fee*,[26] the Michigan Supreme Court, although applying a different set of elements,[27] did state that in the absence of a claim or evidence of fraud or false representation on the part of the incorporators, and in light of a bona fide attempt to incorporate, there was no reason to deny a company the status of a de facto corporation.

Here, Duray Development does not allege that Perrin set up the corporation through fraud or false representations; that is, Duray Development does not allege that Perrin set up the corporation as a sham, for fraudulent purposes, or as a mere instrumentality under a theory

---

Supreme Court long ago stated the same three elements as *Model Board* in *Newcomb-Endicott Co*, 167 Mich at 580-581; however, the four elements from *Tisch Auto Supply* are the most often cited language regarding a de facto corporation.

[25] *Tisch Auto Supply*, 222 Mich at 200 (citations omitted); see also *Henderson*, 176 Mich App at 672.

[26] *Newcomb-Endicott Co*, 167 Mich at 582.

[27] See n 24 of this opinion.

of piercing the corporate veil. Rather, as the record indicates, Duray Development did not learn until after filing the complaint in this case that Outlaw was not a valid limited liability company on October 27, 2004. Duray Development at all times dealt with Outlaw as a valid corporation with which it contracted. Duray Development's sole member, Munger, testified that once the second contract took effect, Duray Development no longer considered Perrin or Perrin Excavating as parties to the contract, but instead considered Outlaw to be the new "contractor." There is no evidence whatsoever to suggest that Perrin formed Outlaw in anything other than good faith. Accordingly, the trial court was correct to conclude that, had Outlaw been formed as a corporation instead of a limited liability company, it would have been a de facto corporation for purposes of liability on the October 27, 2004 contract. Thus, all elements of a de facto corporation were present in this case.

The trial court, however, concluded that the de facto *corporation* doctrine does not apply to *limited liability companies* and therefore did not apply to Outlaw. It reasoned that the plain reading of the Limited Liability Company Act "clearly and specifically provides for the time that a limited liability company comes into existence and has powers to contract." The trial court then cited a passage from a legal treatise, which states "[t]he *de facto* corporation doctrine and, presumably, a possible *de facto* [limited liability company] doctrine are apparently dead in Michigan, having been replaced by the Business Corporation Act, MCL 450.1221, and the [Limited Liability Company Act], MCL 450.4202."[28] Thus, the trial court concluded that the Legislature had

---

[28] Cambridge & Christopoulos, Michigan Limited Liability Companies, ICLE (2d ed, 2008 supp), § 3.30.

"clearly spoken on this subject" and did not extend the de facto corporation doctrine to limited liability companies.

Neither this Court nor the Supreme Court has addressed whether the de facto corporation doctrine can be extended or applied to a limited liability company.[29] That is not to say, however, that the doctrine *cannot* be applied to a limited liability company. The 1911 case of *Newcomb-Endicott Co* is similar to the facts here and suggests that the plain language of the Limited Liability Company Act and the Business Corporation Act should not supplant the de facto corporation doctrine.

In *Newcomb-Endicott Co*, the defendants formed a corporation by filing the articles of association with the Secretary of State on June 15, 1908, and with the county clerk in March 1909.[30] At the time, the relevant incorporating statute provided that a corporation did not exist until the articles of association were filed with both offices.[31] Therefore, the defendants' corporation did not technically exist until March 1909. However, the defendants' corporation contracted with the plaintiff in July 1908, and accumulated an unpaid debt for which the plaintiff sued.[32] At trial, the circuit court ruled that, although the corporation did not exist at the time of the contract and when the debts were incurred, it was a de facto corporation and, as such, the corporation, not the individual defendants, was liable.[33] The plaintiff appealed and argued, in part, that the de facto corporation doctrine contradicted the plain language of the appli-

---

[29] *Id.* (noting that "there are no reported cases in Michigan concerning this uncertainty").

[30] *Newcomb-Endicott Co*, 167 Mich at 577.

[31] *Id.* at 579-580.

[32] *Id.* at 576.

[33] *Id.* at 578.

cable statute, which clearly stated how and when a corporation was formed.[34] The Supreme Court ruled otherwise, reasoning that, although the plain language of the statute "contemplates the complete organization of the association," including how the articles of association were to be filed, it did not preclude the application of the de facto corporation doctrine.[35]

The Supreme Court's conclusion in *Newcomb-Endicott Co*, that statutes contemplating complete organization of an association do not preclude application of the de facto corporation doctrine, contradicts the idea that the de facto corporation doctrine perished on enactment of the Business Corporation Act and the Limited Liability Company Act. Although *Newcomb-Endicott Co* dealt with a corporation rather than a limited liability company, it would be arbitrary to conclude, without any precedent to the contrary, that the de facto corporation doctrine applies to corporations but not to limited liability companies.

Indeed, the similarities between the Business Corporation Act and the Limited Liability Company Act support the conclusion that the de facto corporation doctrine applies to both. The purposes for forming a limited liability company and a corporation are similar. Notably, the Limited Liability Company Act states, "A limited liability company may be formed under this act for any lawful purpose for which a domestic corporation or a domestic partnership could be formed, except as otherwise provided by law."[36] Further, both the Limited Liability Company Act and the Business Corporation Act contemplate the moment in time when a limited

---

[34] *Id.* at 579.

[35] *Id.* at 582.

[36] MCL 450.4201; see also MCL 450.1251(1).

liability company or corporation comes into existence.[37] Because the Business Corporation Act and the Limited Liability Company Act relate to the common purpose of forming a business and because both statutes contemplate the moment of existence for each, they should be interpreted in a consistent manner.[38]

Accordingly, we conclude that the de facto corporation doctrine applies to Outlaw, a limited liability company. As a result, Outlaw, and not Perrin, individually, is liable for the breach of the October 27, 2004 contract.

### E. CORPORATION BY ESTOPPEL

As stated previously, generally, a person who signs a contract on behalf of a company that is not yet in existence becomes personally liable on that contract.[39] However, a court can order that the company is instead liable if it finds that corporation by estoppel prevented the opposing party from arguing against the existence of a corporation.[40] The Supreme Court in *Estey Mfg Co v Runnels*,[41] summarized the principle of corporation by estoppel as follows: "Where a body assumes to be a corporation and acts under a particular name, a third party dealing with it under such assumed name is estopped to deny its corporate existence."

As with the doctrine of de facto corporation, this Court has not addressed whether corporation by estoppel can be applied to limited liability companies. How-

---

[37] MCL 450.1221 (Business Corporation Act); MCL 450.4202 (Limited Liability Company Act).

[38] *McNeil v Charlevoix Co*, 275 Mich App 686, 701; 741 NW2d 27 (2007); *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998).

[39] *Campbell*, 260 Mich at 46.

[40] *Estey Mfg*, 55 Mich at 133.

[41] *Id.*

ever, corporation by estoppel is an equitable remedy, and its purpose is to prevent one who contracts with a corporation from later denying its existence in order to hold the individual officers or partners liable.[42] The doctrine has come up on numerous occasions in conjunction with de facto corporations.[43] In that setting, the rule is:

> In the case of the associates in the corporation *de facto*, and those who have had dealings with it, there is a mutual estoppel, resting upon broad grounds of right, justice and equity. The first class are not suffered to deny their incorporation, nor the second to dispute the validity of their assertions of corporate powers.[44]

With this in mind, and in light of the purpose of corporation by estoppel, the corporate structure has little impact on the equitable principles at stake. In other words, there is no reason or purpose to draw a distinction on the basis of corporate form. Furthermore, like de facto corporation, because corporation by estoppel coexists with the Business Corporation Act, so too can it coexist with the Limited Liability Company Act.

Further, the Supreme Court has on at least one occasion applied the doctrine in a not-for-profit corporate context.[45] Extending the corporation by estoppel doctrine to nonprofit corporations was not a great leap in the application of the doctrine. And extension of the corporation by estoppel doctrine to nonprofit corporations supports the conclusion that the doctrine can also be extended beyond application solely to cases involving

---

[42] *Id.*; 6 Michigan Civil Jurisprudence, § 47, p 140, citing *Lockwood*, 178 Mich at 388.

[43] See, e.g., *Newcomb-Endicott Co*, 167 Mich at 581-582, citing *Swartwout*, 24 Mich at 396; *Tisch Auto Supply*, 222 Mich at 201.

[44] *Swartwout*, 24 Mich at 396 (citations omitted).

[45] See *Flueling v Goeringer*, 240 Mich 372, 375; 215 NW 294 (1927).

for-profit corporations. For these reasons, we conclude that the doctrine of corporation by estoppel may reasonably be extended to limited liability companies.

Moreover, here, the record clearly supports a finding of "limited liability company by estoppel" through the extension of the corporation by estoppel doctrine. Perrin was an individual party to the first contract, as was his limited liability company, Perrin Excavating. However, only Outlaw became a party to the second contract, which superseded the first. And all parties dealt with the second contract as though Outlaw were a party. After the second contract, Duray Development received billings from Outlaw, and not from Perrin. Duray Development also received a certificate of liability insurance for Outlaw. Munger testified that he dealt with Perrin, Perrin Excavating, and KDM Excavating before the second contract and only dealt with Outlaw after. Duray Development continued to assume Outlaw was a valid limited liability company after filing the lawsuit and only learned of the filing and contract discrepancies once litigation began in July 2006.

However, we cannot find plain error requiring reversal on the doctrine of limited liability company by estoppel. Perrin did not raise the issue in the trial court, and the trial court did not err by not raising it for him. "Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute."[46] "[A] party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention."[47] Accordingly, it was not the trial court's responsibility to raise an argument for Perrin that he did not raise for himself. And, as indi-

---

[46] *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008).

[47] *Id.*

cated above, corporation by estoppel, like de facto corporation, has never been applied to limited liability companies in the past. Thus, we cannot conclude that the trial court made a clear and obvious mistake by not applying the corporation by estoppel doctrine when there is no precedent indicating that the trial court should have applied the doctrine. Accordingly, we conclude that no plain error occurred requiring reversal on this issue.

### III. EXCLUSION OF PERRIN'S TESTIMONY

#### A. STANDARD OF REVIEW

Perrin argues that the trial court's decision to not allow him to testify because defendants failed to provide a witness list before trial was unreasonable and unprincipled. According to Perrin, he was a party to the litigation who was denied his day in court. Further, Perrin argues, the decision effectively dismissed his counterclaim against Duray Development.

This Court reviews for an abuse of discretion a trial court's decision to bar witness testimony after a party has failed to timely submit a witness list.[48] An abuse of discretion exists when the trial court's decision falls outside the range of principled outcomes.[49]

#### B. ANALYSIS

MCR 2.401(I)(1) provides that all parties must file and serve witness lists within the time allotted by the trial court. MCR 2.401(I)(2) provides that "[t]he trial

---

[48] *Carmack v Macomb Co Community College*, 199 Mich App 544, 546; 502 NW2d 746 (1993).

[49] *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

court may order that any witness not listed in accordance with this rule will be prohibited from testifying at trial except upon good cause shown." Here, the trial court entered a scheduling order requiring the parties to submit their witness lists no later than 28 days before the close of discovery. And Perrin concedes that defendants did not provide a witness list within that time.

On the first day of trial, the trial court addressed defendants' failure to submit a witness list pursuant to the scheduling order, and stated:

> Without having listed witnesses or without having listed or exchanged exhibits and so forth, I do believe that the defense will have some difficulty getting me to allow witnesses or exhibits. It's been represented to me that [the] defense does not intend to do so.[50] I agree with plaintiff's counsel here that rebuttal is for the plaintiff to present rebuttal evidence and rebuttal witnesses if it finds the need to do so and desires to do so. The—however, on the other hand, while the plaintiff is not required to call anyone other than those he believes is needed to basically prove his case and the damages being claimed here, that once those witnesses are on the stand, certainly they can be cross-examined by the defense, and potentially the items coming out in that cross-examination might be adequate defense, and for that matter, even sustain a counterclaim.
>
> * * *
>
> But certainly as far as the defense here, it wouldn't be the first case that was made by use of witnesses called by an opponent, so I can't—the mere fact that they are not going to be presenting any witnesses of their own or presenting any exhibits does not necessarily mean that they lose, at least that's my belief at this particular stage.

---

[50] Defense counsel stated earlier in the hearing: "With respect to witnesses, we don't intend to have witnesses other than those named by the plaintiff, and Mr. Perrin, who is a party to this case."

After the conclusion of Duray Development's proofs, defense counsel proceeded with his case and attempted to call Perrin as a witness. Duray Development's counsel objected, citing the trial court's earlier ruling. Defense counsel responded that he should be able to question Perrin regarding Munger's testimony that he did not learn until discovery that Outlaw did not exist at the time of the second contract and whether the work performed was pursuant to a contract with Outlaw. He argued that Munger's testimony brought a new issue to the case. Duray Development's counsel replied by pointing out that the original complaint itself addressed the issue, by alleging Perrin was individually liable because Outlaw was not a valid company until after the second contract. The trial court agreed with Duray Development's counsel, at which point defense counsel stated: "That's fine. I think it's been covered anyways."

Once a party has failed to file a witness list in accordance with the scheduling order, it is within the trial court's discretion to impose sanctions against that party. These sanctions may preclude the party from calling witnesses. Disallowing a party to call witnesses can be a severe punishment, equivalent to a dismissal.[51] But that proposition does not mean that disallowing witnesses is *always* tantamount to a dismissal. Nor does it mean that a trial court cannot impose such a sanction even if it is equivalent to a dismissal.[52] Because the decision is within the trial court's discretion, caselaw mandates that the trial court consider "the circumstances of each case to determine if such a drastic

---

[51] *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993).

[52] *Id.* at 628-629.

sanction is appropriate."[53] "[T]he record should reflect that the trial court gave careful consideration to the factors involved and considered all of its options in determining what sanction was just and proper in the context of the case before it."[54] Relevant factors can include, but are not limited to,

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive.[55]

The trial court should also "determine whether the party can prove the elements of his position based solely on the parties' testimony and any other documentary evidence."[56]

Here, the record does not reflect that the trial court gave consideration to these factors or considered all of its options in determining what sanction was just and proper in the context of the case before it.[57] Therefore, on remand the trial court should reassess Perrin's

---

[53] *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). "[T]he mere fact that a witness list was not timely filed does not, in and of itself, justify the imposition of such a sanction." *Id.*

[54] *Id.*

[55] *Id.* at 32-33 (citations omitted). Note that in *Dean*, it was the plaintiff who failed to file a witness list.

[56] *Grubor Enterprises*, 201 Mich App at 629.

[57] See *id.*; *Dean*, 182 Mich App at 32.

request to testify, taking the above-mentioned factors into consideration and explaining its determination on the record.

We find no plain error in the trial court's failure to raise sua sponte the issue of corporation by estoppel. However, we reverse the judgment of the trial court that the de facto corporation doctrine cannot apply to limited liability companies, and we reverse the trial court's decision to bar defendants from calling witnesses. Accordingly, we remand for further proceedings in accordance with this opinion. We do not retain jurisdiction. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.