*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT LAKE GOLF & PRACTICE CENTER,

      Petitioner-Appellee,

v

PLAINFIELD TOWNSHIP, also known as
PLAINFIELD CHARTER TOWNSHIP,

      Respondent-Appellant.

UNPUBLISHED
July 23, 2020

No. 348058
Tax Tribunal
LC No. 17-002609-TT

Before: METER, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Respondent, Plainfield Township, appeals as of right the Tax Tribunal's findings regarding the true cash value, state equalized value, and taxable value of the property of petitioner, Scott Lake Golf and Practice Center. Because the Tax Tribunal did not err as a matter of law and its findings were supported by competent, material, and substantial evidence, we affirm.

## I. FACTUAL BACKGROUND

The property is an existing 27-hole, public, daily-fee golf course that operates profitably. In 2017, respondent assessed the property on the basis that its highest and best use was as vacant land available for residential development. Petitioner contested this determination, arguing that the property's highest and best use was to continue operation as a public golf course. Respondent's assessor based his opinion on the value of comparable sales of land for residential development, while petitioner's appraiser based his opinion on a capitalized value of the property as a golf course under an income analysis. Both parties' experts provided evidence to refute the other party's analysis.

The Tax Tribunal found the opinion of petitioner's appraiser persuasive and found that the sales comparison approach of respondent's assessor lacked weight and credibility. The tribunal also considered petitioner's sales comparison approach and found that it lacked weight. It credited and largely adopted petitioner's income approach, though it declined to adopt certain deductions for which petitioner had not provided authority. Ultimately, the Tax Tribunal found that the property had been overassessed and modified the property's values.

## II.  STANDARDS OF REVIEW

This Court's review of a decision by the Tax Tribunal is limited.  *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012).  When a party does not dispute the facts or allege fraud, this Court reviews whether the tribunal "made an error of law or adopted a wrong principle."  *Id*. at 527-528.  This Court may review the tribunal's evidentiary rulings if they involve errors of law.  *Georgetown Place Coop v City of Taylor*, 226 Mich App 33, 239; 572 NW2d 232 (1997).

This Court must accept the Tax Tribunal's factual findings if "competent, material, and substantial evidence on the whole record" supports them.  Const 1963, art 6, § 28.  Substantial evidence supports the Tax Tribunal's findings if a reasonable person would accept the evidence as sufficient to support the conclusion.  *Wayne Co v Mich State Tax Comm*, 261 Mich App 174, 186-187; 682 NW2d 100 (2004).  Substantial evidence "may be substantially less than a preponderance of the evidence."  *Id*. at 187.

## III.  CREDIBILITY

Respondent argues that the Tax Tribunal erred when it determined as a matter of law that respondent's valuation disclosure had lesser weight than an appraisal report.  The record does not support respondent's contention.

Generally, the Tax Tribunal's rules of procedure govern the proceedings before it. *Signature Villas, LLC v Ann Arbor*, 269 Mich App 694, 705; 714 NW2d 392 (2006).  Unless the Tax Tribunal grants leave, a witness may not testify about the value of property without submitting a signed valuation disclosure that contains the witness's conclusion of value and the basis for that conclusion.  Mich Admin Code, R 792.10255(2).  A " 'valuation disclosure' means documentary or other tangible evidence in a property tax contested case that a party relies upon in support of the party's contention as to the true cash value of the subject property or any portion thereof and contains the party's value conclusions and data, valuation methodology, analysis, or reasoning." Mich Admin Code, R 792.10237.

In this case, respondent's assessor agreed that he had not provided an appraisal report. Petitioner sought to exclude respondent's valuation disclosure on the basis that it was not admissible because it was not an appraisal report.  When the Tax Tribunal rejected petitioner's challenge, the tribunal noted that petitioner would have an opportunity for cross-examination on the basis that there was a substantial difference between a valuation disclosure and an appraisal report.  The tribunal then referred to its rules of procedure, repeated that petitioner's objection was noted, and admitted respondent's valuation disclosure.

The record simply does not support respondent's contention that the tribunal determined that a valuation disclosure had less weight as a matter of law.  To the contrary, the tribunal admitted and considered respondent's valuation disclosure and determined that it lacked weight and credibility.  This Court will not interfere with the Tax Tribunal's determinations of the weight to assign to the evidence.  *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 404; 576 NW2d 667 (1998).  It is not an error of law for the tribunal to reject a party's proposed valuation.  *Id*.  While respondent is correct that the tribunal treated its valuation disclosure as less

persuasive than petitioner's appraisal report, it was not an error of law for the tribunal to reject respondent's evidence after concluding that it had little weight. The tribunal's ruling outlined several deficiencies in respondent's report that were based on the substance of the report, not its form.

Respondent's remaining contentions largely rest on its assertion that the tribunal erred by accepting the opinion of petitioner's appraiser and rejecting its valuation disclosure. Respondent asserts that the tribunal's highest and best use and true cash value findings both lacked the support of competent, material, and substantial evidence because they were based on the opinion of petitioner's appraiser.[1] We decline to overturn the tribunal's determinations concerning the weight and credibility of the evidence. As will be discussed, the tribunal's findings were supported by competent, material, and substantial evidence on the whole record.

## IV. HIGHEST AND BEST USE

Respondent asserts that the evidence did not support the Tax Tribunal's finding that the highest and best use of the property was a golf course, rather than as vacant land for residential development. We disagree.

True cash value and fair market value are synonymous. *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007). Fair market value is the highest price that the property would bring if exposed for sale on the open market. *Detroit Lions, Inc v Dearborn*, 302 Mich App 676, 697; 840 NW2d 168 (2013). Fair market value is based on the highest and best use of the property, which means "the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use." *Id*. (quotation marks and citations omitted). The highest and best use of the property is a use that is "legally permissible, financially feasible, maximally productive, and physically possible." *Id*. (quotation marks and citation omitted). The property's highest and best use may be its existing use. *Id*.

In this case, the tribunal found that the property's highest and best use was as a public, daily-fee golf course. Evidence in the record supported the tribunal's findings. Petitioner's appraiser testified that the highest and best use of the property was continued use as a daily-fee golf course. He opined that the property was too large and there was insufficient demand to feasibly convert it to residential development. The property would reasonably accommodate 673 residential units, but respondent averaged only 100 building permits a year, and it was not reasonable to assume that petitioner would capture the entire market for development. Petitioner's appraiser opined that the development project was not financially feasible because it would take

---

[1] We note that respondent's argument rests in part on a contention that the Tax Tribunal arbitrarily accepted the opinion of petitioner's appraiser in this case, but rejected a similar report by petitioner's appraiser in a different case. While the second report is not part of the lower court record in this case because respondent did not file it with the tribunal, see MCR 7.210(A)(1), we note that we have reviewed the reports, and respondent's contention lacks merit. While the reports are similar in their generalities, they are different in their specific applications to the properties at issue. Additionally, the specifics of both cases significantly vary.

many years to absorb and would not be closed out in a reasonable time, which created an unreasonable risk that developers would not assume.

In contrast, respondent's assessor offered no evidence to support the feasibility of a residential development. Respondent's assessor generally opined that a residential development was financially feasible because there was a demand for housing in the area. When asked why he did not attach data to his valuation disclosure to support his statement that there was an increase in housing demand, respondent's assessor testified that, "being a valuation disclosure I was just trying to give a synopsis of what I believe and what my opinion is and what my experience is in the market that I'm operating in." Respondent's assessor was not aware of any going-concern golf course in respondent's township that had been converted to residential development.

We conclude that competent, material, and substantial evidence supported the tribunal's finding that the highest and best use of the property was a public, daily-fee golf course. A reasonable person would accept the evidence as sufficient to support the tribunal's conclusion that petitioner established that residential development was not financially feasible.

## V. TRUE CASH VALUE DETERMINATION

Respondent contends that the Tax Tribunal's finding regarding true cash value was not supported by competent, material, and substantial evidence. Respondent also bases this contention on its argument that the opinion of petitioner's assessor was not credible. For the reasons previously stated, we reject this argument. Considering the whole record, we conclude that the tribunal's true cash value finding was supported by sufficient evidence.

Generally, competent and substantial evidence supports the tribunal's determination of true cash value if it is within the range of the evidence advanced by the parties. *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 641-642; 806 NW2d 342 (2011). When determining value, the tribunal may accept one theory and reject the other theory, may accept both theories, or may combine theories. *Id.* at 639-640.

Both parties' witnesses opined that the income approach to value was the best method to determine the value of petitioner's property as a golf course. Petitioner's appraiser offered a capitalized true cash value that he obtained on the basis of local market data. Petitioner's appraiser specifically considered the area within 10 to 20 miles of petitioner's golf course to determine an average volume of play, which petitioner's actual volume of play fell within. He used this number to determine average green fees and other sources of revenue, from which he subtracted petitioner's stabilized expenses. He established that petitioner's stabilized expenses were 86.4% of gross revenue, which was similar to the average expense ratio for other golf courses in the frost belt with a similar revenue. Petitioner's appraiser then capitalized the property's net operating income on the basis of a capitalization rate extracted from market data, which he checked against a "band of investment" method. Applying the capitalization rate allowed petitioner's appraiser to derive a going-concern value for the property, from which petitioner removed the value of personal property and other business deductions.

While the Tax Tribunal did not accept petitioner's deduction of business intangibles from the going-concern value, it accepted the valuation of petitioner's expert regarding income,

expenses, operating income, and capitalization. The tribunal's ultimate determination of value was within the range of values advanced by the experts in this case, and the tribunal was entitled to accept petitioner's approach to value. While respondent argues that the Tax Tribunal should have instead adopted its sales comparison approach, the tribunal determined that approach had no credibility. It thoroughly explained its reasoning for that finding, and we will not overturn its decision on appeal. Ultimately, we conclude that competent, material, and substantial evidence supported the tribunal's finding of the property's true cash value because a reasonable person would accept the opinion of petitioner's appraiser as sufficient to support the tribunal's conclusion.

## VI. BIAS

Respondent argues that the tribunal judge was biased against it, which the judge demonstrated by rejecting its valuation disclosure and favoring an appraisal report without reason. We disagree.

As an initial matter, this issue is not preserved. To preserve an issue of judicial bias, a party must raise the claim before the trial court. *Meagher v Wayne State Univ*, 222 Mich App 700, 726; 565 NW2d 401 (1997). Respondent did not raise a bias argument before the tribunal. When a party has not preserved a claim of judicial bias, this Court reviews the issue for plain error. See *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010). A party who alleges that a judge is biased must overcome the heavy presumption in favor of judicial impartiality. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996).

Generally, this Court will not conclude that a judge was biased on the basis of a ruling against a party, even when the ruling was erroneous. *Mahlen Land Corp v Kurtz*, 355 Mich 340, 350; 94 NW2d 888 (1959); *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004). Judicial rulings almost never constitute a valid basis for bias, unless the judicial opinion displays "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Cain*, 451 Mich at 496 (quotation marks, citation, and emphasis omitted).

As previously discussed, the tribunal's rejection of respondent's valuation disclosure was based on the weight it assigned to the evidence, and its ruling was not erroneous. We have reviewed the tribunal's rulings, which display no deep-seated favoritism toward petitioner or antagonism toward respondent. We conclude that respondent's assertions of bias lack merit because respondent has not demonstrated any error, much less a plain error.

Affirmed.

/s/ Patrick M. Meter
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

-5-