*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDY POLES, Personal Representative of the
ESTATE OF POLES POLES,

        Plaintiff-Appellant/Cross-Appellee,

v

ASCENSION MACOMB-OAKLAND HOSPITAL
and WAHED ISHAQSEI, M.D.,

        Defendants-Appellees/Cross-
        Appellants.

UNPUBLISHED
August 11, 2025
12:15 PM

No. 365623
Oakland Circuit Court
LC No. 2020-183719-NH

Before: YOUNG, P.J., and LETICA and KOROBKIN, JJ.

PER CURIAM.

Plaintiff, Randy Poles, acting as personal representative of the Estate of Poles Poles, sued defendants, Ascension Macomb-Oakland Hospital (Ascension) and Dr. Wahed Ishaqsei, for medical malpractice related to the October 2015 death of Poles Poles (Poles). Poles was treated at Ascension, and Dr. Ishaqsei was his attending physician. Following a jury trial, the jury returned a verdict of no cause of action. Plaintiff appeals by right from the final judgment. Defendants have also filed a cross-appeal addressing substantively the same issues. Because the trial court did not abuse its discretion by denying plaintiff's motion to impose discovery sanctions, we affirm.

## I. BACKGROUND AND FACTS

In 2015, 76-year-old Poles lived in an assisted living facility because his mobility was limited as a result of Parkinson's disease and other conditions. Dr. Ishaqsei was his attending physician at the facility. On October 5, 2015, a nonverbal and disoriented Poles was taken to Ascension for emergency care because he was having trouble breathing. Poles was admitted to the hospital, and Dr. Ishaqsei continued to serve as his attending physician. Plaintiff alleged that on October 13, 2015, Poles went into respiratory failure that required immediate intervention to save his life, but that Poles was not promptly treated for respiratory failure or with appropriate procedures. Plaintiff alleged that Dr. Ishaqsei breached the standard of care by not providing

-1-

immediate intubation and other actions to restore Poles's breathing and that as a result Poles went into cardiac arrest and died on October 13, 2015.

A central disputed issue in the case was whether Dr. Ishaqsei was personally involved in Poles's care at the time of his death. Plaintiff argued that Dr. Ishaqsei was involved because in the hospital discharge summary that Dr. Ishaqsei prepared about a month after Poles's death, he stated that he was with Poles and his family for about 30 minutes before Poles was discharged to inpatient hospice. Yet the parties agreed that the discharge summary contained inaccurate information, as Poles's family refused to place him in hospice and he died at the hospital. In addition, plaintiff relied on records indicating that Dr. Ishaqsei was the responsible provider or ordering physician on several orders for treatment in Poles's medical chart on the night of his death.

Plaintiff first learned of the defense theory that Dr. Ishaqsei was uninvolved in Poles's care at his deposition in June 2021, when Dr. Ishaqsei testified that he was not on duty at the time that Poles began experiencing respiratory problems in the evening about two hours before his death. Dr. Ishaqsei also testified that he likely confused another patient's records with Poles's records when he later prepared the discharge summary for Poles. Other staff who cared for Poles in the hours preceding his passing could not recall Dr. Ishaqsei being present in the hospital when Poles began to show signs of respiratory distress. Sierra Elberson, a respiratory therapist, testified in her deposition that at about 8:00 p.m., in line with hospital protocol, she modified a standing order for nebulizer treatments without consulting Dr. Ishaqsei, although it was placed under his name as attending physician. The medical chart indicated that after Poles passed away, a nurse called Dr. Ishaqsei to notify him.

In early 2022, after the close of discovery, defendants moved for summary disposition on the basis that there was no genuine dispute of material fact that Dr. Ishaqsei was not at the hospital at the time of the alleged negligence. The trial court denied the motion, reasoning that there were genuine issues of material fact because Dr. Ishaqsei's discharge summary contained bizarre discrepancies and his name was on orders given for Poles's care.

Over six months later in November 2022, defendants sent plaintiff copies of records they intended to use at trial that they had not previously produced. The records included documentation from PerfectServe, a communication company whose services Ascension used for its staff to contact physicians about patients, as well as a chart access log, or audit trail, showing who had accessed Poles's electronic medical record and when. Dr. Ishaqsei testified at trial that he was prompted to call PerfectServe shortly before the records were produced after brainstorming with his attorney about other ways to prove his lack of involvement because he realized that PerfectServe was the method by which other providers could have contacted him. Defendants therefore obtained the records from PerfectServe to show that Dr. Ishaqsei was not in communication with providers at the hospital when Poles began experiencing respiratory problems at about 8:00 p.m. on October 13, 2015. The records showed that Dr. Ishaqsei was contacted at about 4:00 p.m. to renew an order for restraints but not contacted again until after Poles had died. Defendants also added new witnesses to their witness list to support the admission of these records at trial, scheduled for early February 2023.

Two months later in late January 2023, plaintiff moved to impose discovery sanctions against defendants for what he alleged was a pattern of defendants' discovery violations and

misrepresentations. Plaintiff alleged that he was blindsided by the late addition of the new witnesses and the late production of the records from PerfectServe as well as the audit trail, which had not been previously produced by defendants during discovery. Plaintiff believed that defendants were required to provide this information to plaintiff much earlier, when plaintiff obtained Poles's medical records from Ascension before he filed his complaint, as part of defendants' initial disclosures, in the answers and affirmative defenses, or in response to several duces tecum deposition notices. He further alleged that defendants falsely led him to believe that all relevant documents had been turned over to him. Plaintiff also complained that defendants had not turned over all of the PerfectServe and audit trail records, including outgoing communications from Dr. Ishaqsei or communications from other providers involved in Poles's care, although he did not request an order for those records or to reopen discovery. Plaintiff asked that the trial court sanction defendants by entering a default judgment against them on the basis of their alleged intentional discovery abuses.

The trial court declined to impose a default judgment. Because defendants' additions to the witness list were untimely, it barred defendants from calling the newly added witnesses at trial. The court, however, allowed defendants to offer the records into evidence. Without the additional witnesses, defendants were unable to admit the audit trail records, but the jury heard about the PerfectServe records. At the close of plaintiff's case, defendants moved for directed verdict on several grounds, including on the same basis that it had previously moved for summary disposition—that no evidence supported that Dr. Ishaqsei was present or contacted by hospital staff at the time of the alleged malpractice. The trial court denied the motion, again finding a question of fact.[1] Ultimately, the jury returned a verdict of no cause of action on plaintiff's medical malpractice claim.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision regarding discovery sanctions for an abuse of discretion. *In re Gregory Hall Trust*, 346 Mich App 75, 81; 11 NW3d 552 (2023). An abuse of discretion occurs when the decision of the trial court falls outside the range of principled and reasonable outcomes. *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024). An error of law necessarily constitutes an abuse of discretion. *Pirgu v United Services Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). A trial court's findings of fact are reviewed for clear error. *Traxler v Ford Motor Co*, 227 Mich App 276, 282; 576 NW2d 398 (1998).

## III. ANALYSIS

Plaintiff argues that the trial court abused its discretion by not granting him a default judgment against defendants as a sanction for discovery abuses. We disagree.

Although the parties dispute whether defendants were legally required to disclose the PerfectServe and audit trail documents earlier in the case, see MCR 2.302(A), or even before the lawsuit was filed, as a component of plaintiff's medical record, see MCL 600.2912b(5), we need

---

[1] The trial court later granted partial directed verdict on plaintiff's claim for loss of society damages.

not resolve those particular questions. Rather, for purposes of our analysis, we will assume that defendants committed a discovery violation or were obligated to provide those records at an earlier point in time. But, for the reasons set forth below, we nonetheless conclude that the trial court did not abuse its discretion in denying the relief plaintiff sought.

In his motion for sanctions, plaintiff relied on MCR 2.313(B)(2), which provides, in relevant part:

> (2) *Sanctions by Court in Which Action Is Pending*. If a party or an officer, director, or managing agent of a party, or a person designated under MCR 2.306(B)(5) or 2.307(A)(1) to testify on behalf of a party, fails to obey an order to provide or permit discovery . . . the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:
>
> (a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (b) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters into evidence;
>
> (c) an order striking pleadings or parts of pleadings, staying further proceedings until the order is obeyed, dismissing the action or proceeding or a part of it, or rendering a judgment by default against the disobedient party. . . .

Plaintiff also relied on MCR 2.504(B)(1), which provides:

> (B) Involuntary Dismissal; Effect.
>
> (1) If a party fails to comply with these rules or a court order, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims.

When asked to impose a discovery sanction, the trial court should consider the following factors:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the [movant]; (4) actual notice to the [movant] of the witness and the length of time prior to trial that the [movant] received such actual notice; (5) whether there exists a history of [nonmovant's] engaging in deliberate delay; (6) the degree of compliance by the [nonmovant] with other provisions of the court's order; (7) an attempt by the [nonmovant] to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010), quoting *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990) (brackets omitted).]

-4-

Sanctions such as dismissal or default should be imposed only when the conduct at issue is flagrant or involves wanton refusal to facilitate discovery, typically involving repeated violations of a court order. *Swain v Morse*, 332 Mich App 510, 518; 957 NW2d 396 (2020). Such drastic penalties should be cautiously used. *Id*. For instance, in *Frankenmuth Mut Ins Co v ACO, Inc*, 193 Mich App 389, 398-399; 484 NW2d 718 (1992), this Court held that a default judgment for failing to respond to interrogatories was an abuse of discretion in the absence of an order to compel or some other compelling circumstance. A default should be reserved for the most egregious circumstances. *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 87; 618 NW2d 66 (2000). The court's chosen discovery sanction must be "proportionate and just." *Id.* When considering a default judgment, a trial court should weigh additional factors:

> Before imposing the sanction of a default judgment, a trial court should consider whether the failure to respond to discovery requests extends over a substantial period of time, whether an existing discovery order was violated, the amount of time that has elapsed between the violation and the motion for a default judgment, the prejudice to [the party requesting default], and whether wilfulness has been shown. The court should evaluate other options before concluding that a drastic sanction is warranted. [*Traxler*, 227 Mich App at 286, quoting *Thorne v Bell*, 206 Mich App 625, 632-633; 522 NW2d 711 (1994) (citations omitted, alteration in *Traxler*).]

Here, in ruling on plaintiff's motion, the trial court struck defendants' untimely supplemental witness list for violating MCR 2.401(I)(1). But it declined to strike the PerfectServe and audit trail documents, allowing defendants to seek to introduce them at trial. The trial court observed that the documents were not produced to plaintiff until November 22, 2022, but that the discovery cutoff was October 13, 2021. But it also observed that the records were "vital pieces of evidence" for both sides, as "this record could prove that medical staff did indeed contact Dr. Ishaqsei, or the record could prove that he was never contacted as the doctor suggested." The trial court also found that defense counsel did not uncover these records and witnesses until November 2022 and produced them as soon as they were available. Put differently, defendants acted to "timely cure the defect." *Perrin*, 288 Mich App at 165. Therefore, the trial court did not find that any discovery violation was willful, nor that there was a history of noncompliance, nor that defendants delayed in handing over the documents. See *id.*; *Traxler*, 227 Mich App at 286.

The trial court considered the possibility of the lesser sanction of ordering production of more records, but declined to do so because plaintiff's request—filed two months after defendants provided the new records and only a week and a half before trial was scheduled—came too late to mitigate any potential harm. See *Perrin*, 288 Mich App at 165; *Traxler*, 227 Mich App at 286. The court was satisfied that plaintiff would not be unfairly prejudiced by not having the entire record because he would be able to cross-examine witnesses. Put differently, the interests of justice would be served by allowing defendants to seek to introduce the documents. See *Perrin*, 288 Mich App at 165. The court noted that it would be unfair to penalize defendants when plaintiff failed to file the motion promptly and the case—one of the oldest on the court's docket—was imminently scheduled for trial. The trial court therefore considered the time between any violation and plaintiff's motion for default judgment and that plaintiff received actual notice of the documents months before trial. See *id.*; *Traxler*, 227 Mich App at 286.

-5-

The trial court did not doubt defense counsel's statement that the entire PerfectServe record and audit trail had been produced; however, it asked defense counsel, without ordering her to do so, to contact PerfectServe to determine whether there were other records. At trial, defense counsel addressed the court's request and clarified that she had provided to plaintiff's counsel PerfectServe's response—that no text communications were available but that Dr. Ishaqsei placed two calls to the unit, at 15:55 and 23:55, which were not identifiable to a specific patient.

Upon review of this record, we cannot say that there was an abuse of discretion in denying plaintiff's request for default judgment when the trial court correctly considered, albeit implicitly, the factors outlined in *Perrin*, regarding whether to impose a discovery sanction, and *Traxler*, regarding whether to impose a default judgment. The trial court appropriately weighed relevant considerations including the timing of plaintiff's motion, the timing of defendants' purported violation, defendants' efforts to cure any discovery defects, and prejudice. See *Perrin*, 288 Mich App at 165; *Traxler*, 227 Mich App at 286.

Nor do we find that the trial court's rejection of plaintiff's request falls outside the range of reasonable and principled outcomes. See *Danhoff*, 513 Mich at 442. A trial court has discretion to impose a default but "only where the conduct at issue is flagrant or involves wanton refusal to facilitate discovery." *Morse*, 332 Mich App at 518. Plaintiff had not obtained an order to compel following violations of discovery nor was there another "compelling circumstance" when the trial court determined that defendants produced the information promptly after discovering it. See *Frankenmuth*, 193 Mich App at 398-399. Although plaintiff argues that defendants' failure to comply with discovery was willful, meaning "conscious or intentional, and not accidental," the trial court rejected this characterization. See *id.* at 397. We discern no clear error in the trial court's factual findings underpinning its reasoning. See *Traxler*, 227 Mich App at 282. In *Traxler*, this Court upheld a sanction of default judgment when the record did not contradict the trial court's conclusion that the defendant had "lied and perpetrated an 'outrageous fraud.' " *Id.* at 287. It is not evident from the record here that defendants' failure to produce the documents and witnesses earlier was similarly "flagrant" or involved "wanton refusal to facilitate discovery" such that we should overturn a jury verdict and order entry of a default against defendants. *Morse*, 332 Mich App at 518. And as defendants argued at the motion hearing, they in fact had an incentive to produce the records earlier to support their motion for summary disposition. We therefore conclude that the trial court did not abuse its discretion in rejecting plaintiff's request to enter a default judgment.[2]

---

[2] Plaintiff asks this Court in the alternative to remand for a new trial, with the trial court imposing lesser sanctions including compelling production of all PerfectServe records. This request is both undeveloped, as it appears only in the "relief requested" section of plaintiff's brief and without citation to legal authority, and unpreserved, as plaintiff did not request a new trial in the lower court or even, in its pretrial motion for sanctions, that the trial court reopen discovery or order production of more records. Therefore, plaintiff has waived this issue and we decline to address it. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 293-294; 14 NW3d 472 (2023).

Affirmed.

/s/ Adrienne N. Young
/s/ Anica Letica
/s/ Daniel S. Korobkin