# STATE OF MICHIGAN

# COURT OF APPEALS

ROY RUSHA,

      Plaintiff-Appellant,

v

ADAM M EDELMAN MD, BADAI
ABDELATIF MD, RAMESH KILARU MD,
LISA REEVES MD, CORIZON HEALTH OF
MICHIGAN a/k/a CORIZON HEALTH INC f/k/a
PRISON HEALTH SERVICES (PHS), and
CORIZON INC d/b/a CORRECTIONAL
MEDICAL SYSTEMS,

      Defendant-Appellees,

and

JEFFREY STIEVE MD, VASILIOS POZIOS MD,
and PATRICK GEML PA,

      Defendants.

UNPUBLISHED
October 4, 2016

No. 326745
Wayne Circuit Court
LC No. 13-006487-NH

Before: SHAPIRO, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's grant of summary disposition in favor of the defendants who remained in the case after various dismissals not at issue in this appeal.[1] The trial court accurately summarized that "[t] he gravamen of plaintiff's claim is that he was diagnosed with multiple sclerosis ('MS') and that he had a seizure disorder and that he was not given proper treatment [by defendants] while incarcerated. As a result, plaintiff contends, the conditions were allowed to progress when they could have been effectively controlled with proper medical treatment." The trial court disallowed plaintiff's treating physician from presenting evidence as an expert, and it therefore concluded that plaintiff's remaining experts

---

[1] For convenience, "defendants" will refer only to the defendants presently at issue.

-1-

could not "quantify loss or probability that plaintiff's result would have been different had plaintiff been referred to a neurologist [as plaintiff contended]." The trial court further characterized the matter as a "lost opportunity to achieve a better result" claim and, because plaintiff could not establish the statutorily required "greater than 50%" loss of opportunity under MCL 600.2912a(2), granted summary disposition in favor of defendants. We do not find the trial court's exclusion of the expert to be error under the circumstances, but the trial court incorrectly found this to be a "lost opportunity" case. Rather than attempt to evaluate defendants' alternate ground for affirmance on the existing record, we vacate and remand for further proceedings.

## I. OVERVIEW

Plaintiff was incarcerated in a facility that contracted with defendants to provide medical services to inmates. Plaintiff contends that he suffered from multiple sclerosis. It is undisputed that he saw defendants numerous times for a variety of ailments. It is also undisputed that defendants did not, *inter alia*, refer plaintiff to a neurologist, treat him for MS, or, apparently, believe that he had MS. Plaintiff contends that defendants improperly treated him. Whether or not defendants *actually* improperly treated him is *not* at issue in this appeal. The evidence, chaotic as it is, appears to indicate, insofar as we can determine, that plaintiff did consistently tell defendants that he had a history of MS during his treatment with them. Furthermore, the evidence indicates that defendants did actually take plaintiff's reports seriously enough to review the records available to him and perform some diagnostic tests, and they concluded that he did not have MS. Plaintiff was diagnosed with MS after his release. Some medical records indicate that he may have received a diagnosis earlier, but defendants seemingly did not receive those records until after plaintiff's discharge.

## II. PROCEDURAL HISTORY

The tortuous procedural history of this case is, unfortunately, relevant to one of the issues on appeal. Plaintiff filed his complaint on May 17, 2013. The trial court entered a scheduling order on October 29, 2013, requiring witnesses to be exchanged by January 24, 2014, and cutting off discovery on March 28, 2014. A settlement conference was scheduled for the "Case Evaluation date Plus 42 days"; although case evaluation was not specified more narrowly than "May, 2014." Defendants filed a motion for partial summary disposition on July 30, 2013, and a motion to limit the affidavits of merit on August 9, 2013. The trial court entered a scheduling order on July 30, 2013, setting a hearing on the motion for partial summary disposition for December 20, 2013; however, the lower court register of actions indicates that it was reset to January 31, 2014, and then to January 23, 2014, although we can find no orders obviously doing so in the lower court record. The trial court subsequently entered several substantively identical orders on November 11, 2013, December 19, 2013, and December 20, 2013; one of which referenced the motion to limit affidavits of merit and the others did not reference any motion whatsoever, stating that oral argument was scheduled for January 31, 2014, and that responses to the motion were due by January 17, 2014.

Defendants filed a witness list on January 22, 2014. We can find no order specifying a hearing date of January 23, 2014. Nevertheless, on January 23, 2014, the trial court entered an order granting partial summary disposition in favor of defendants and dispensing with oral

argument because plaintiff had not filed a timely response. Plaintiff filed a response to the motion for partial summary disposition the next day. Apparently, a hearing was in fact held on January 31, 2014, where plaintiff contends he first learned of the order and the untimeliness of his response. Plaintiff admitted that he had, however, received the scheduling order specifying a January 17, 2014, deadline and had overlooked it. On February 18, 2014, defendants filed a motion to dismiss and/or for discovery sanctions based on plaintiff's failure to file a witness list and otherwise comply with discovery orders. The lower court register of actions reflects a motion hearing held on March 12, 2014, no transcript of which has been provided. On the same day, the trial court entered an order requiring plaintiff to file his witness list within ten days and keeping discovery "open to the settlement conference date." The trial court otherwise denied plaintiff's motion for reconsideration, stating that plaintiff had received the scheduling order but failed to open it.

Plaintiff filed his 43-page witness list the same day, on March 12, 2014. In relevant part, Dr. David Mathis, M.D., was listed as plaintiff's expert "in the field of Primary Care/Family Practice," and Dr. Neil J. Farber, M.D., was listed as plaintiff's expert "in the field of Internal Medicine." Several other doctors were noted as potential "standard of care and/or proximate cause" witnesses. Notably, however, Dr. Omar Ahmad, M.D., the expert witness at issue, was not named anywhere on that list, in any capacity. Although the witness list included "Any and all physicians, nurses, therapists, technicians, assistants, aides, agents and/or employees, involved in the case and treatment of Roy Rusha at [various institutions], including, but not limited to" the individually named persons; according to his CV, Dr. Ahmad is associated with the Michigan Neuroscience Clinic, which was not among the institutions named.

However, defendants were actually aware of Dr. Ahmad and that Dr. Ahmad was one of plaintiff's post-incarceration treating physicians.[2] Defendants do not dispute that on August 19, 2014, they served notice on Dr. Ahmad for taking his deposition and to produce records on August 29, 2014. Just over a week later, defendants re-noticed Dr. Ahmad's deposition for a different date. Defendants subsequently cancelled the deposition altogether.

On April 14, 2014, the parties stipulated to adjourn case evaluation. The trial court entered an order setting case evaluation for July of 2014 and holding "[d]iscovery open to new evaluation date." In the meantime, defendants moved to compel discovery, arguing that they had served various discovery requests on plaintiff, responses to which had been due in October of 2013 but most of which remained outstanding. Almost two months later, the trial court entered an order requiring plaintiff to "provide the remaining discovery within 14 days" and "provide available dates for his deposition within 7 days." The trial court subsequently granted what was apparently a unanimous request by all parties to further extend discovery by handwriting on a

---

[2] As will be discussed, the trial court's ruling expressly permitted plaintiff to offer testimony from Dr. Ahmad as a *factual* witness as one of plaintiff's treating physicians, but not as an *expert* witness.

faxed letter[3] that the settlement conference would be pushed back by a month and discovery would remain open to that date.

In October, plaintiff filed a motion seeking to extend discovery. Plaintiff stated that by then, the settlement conference was set for October 4, 2014. Plaintiff did not specifically name Dr. Ahmad, but did assert that defense counsel had unilaterally cancelled a number of depositions without any consultation with plaintiff's counsel. Defendants responded by arguing that discovery had been extended multiple times already due to various failures on plaintiff's part and that defendants had been entirely cooperative. In support of the latter assertion, defendants attached a tome of printouts of various email correspondences between counsels. The trial court ultimately granted plaintiff a small measure of relief and ordered that "Plaintiff may depose Defendants' standard of care experts (only) within 30 days (on or before November 30, 2014)."

Defendants had, in the meantime, also filed a motion for summary disposition arguing that on the basis of the testimony from plaintiff's expert witnesses, plaintiff was unable to establish a prima facie case of medical malpractice. In relevant part, defendants argued that plaintiff's malpractice claim was based on "[lost] opportunity to achieve a better result." Defendants also argued that plaintiff's experts, not being neurologists, could not actually render an opinion whether defendants' actions proximately caused anything, so a "traditional" medical malpractice analysis must also fail. The trial court entered a scheduling order setting a hearing date for February 6, 2015, and requiring plaintiff's response to be filed and served by 4:00 pm on January 23, 2015.

Plaintiff responded that he had provided evidence showing that he suffered direct harm in the form of actual, not speculative, degeneration of his MS condition. He alleged that during his incarceration, defendants ignored his medical history and his symptoms of MS, and they refused to treat him or permit him to be treated properly. Plaintiff attached, for the first time, an affidavit from Dr. Ahmad. The affidavit set forth several opinions held by Dr. Ahmad as well as several statements of fact based on Dr. Ahmad's treatment of plaintiff. Plaintiff's response was filed at 4:21:52 pm on January 23. Defendants pointed this tardiness out in their reply, as well as the 33-page length thereof in violation of MCR 2.119(A)(2).

Defendants contended, baldly, that plaintiff had conceded that the case was a "lost opportunity" action.[4] Defendants also argued that Dr. Ahmad's affidavit should be struck because he had not been on plaintiff's witness list, that the affidavit was speculative and did not support plaintiff's position in any event, and that plaintiff's own evidence showed that he had not really suffered any harm. The trial court held a brief hearing at which plaintiff reiterated that

---

[3] We cannot find an independent copy of that document in the record, or indeed any other order to that effect. The lower court register of actions reflects nothing on that date. However, it does state in a note regarding case evaluation later that its date had been changed "per p/c/ from court on 6/12."

[4] As we will discuss in greater detail, we find absolutely no such concession anywhere in any pleading from plaintiff.

defendants had known of Dr. Ahmad and cancelled the deposition themselves, that he was not pursuing a lost opportunity claim, and that he had complied with scheduling orders.

The trial court ruled that Dr. Ahmad would not be permitted to testify as an expert because he had not been listed as one, but that Dr. Ahmad would be permitted to testify as a fact witness. The trial court took the remainder of the motion under advisement. The trial court subsequently entered an opinion and order that, in relevant part, seemingly assumed without analysis that the instant action was, in fact, a "lost opportunity" claim. The trial court concluded that even if it took as a given that plaintiff did have MS prior to entering prison, without Dr. Ahmad's affidavit, plaintiff's remaining experts presented only equivocal testimony and could not establish the requisite proximate causation. The trial court therefore granted summary disposition in favor of defendants. The trial court subsequently denied plaintiff's motion for reconsideration, clarifying that it found the claim to be a "lost opportunity" one based on plaintiff's assertion that if defendants had treated him properly, plaintiff "lost 100% chance of avoiding further progression and advancement of his disease." This appeal followed.

## III. STANDARD OF REVIEW

A grant of summary disposition under MCR 2.116(C)(10) is reviewed de novo on the basis of the entire record to determine if the evidence, when viewed in the light most favorable to the non-moving party, establishes a genuine issue regarding any material fact. *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). The trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). This Court otherwise reviews de novo the trial court's determinations of law; however, any factual findings made by the trial court in support of its decision are reviewed for clear error, and ultimate discretionary decisions are reviewed for an abuse of that discretion. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470-472; 719 NW2d 19 (2006). Under the abuse of discretion standard, this Court "cannot disturb the trial court's decision unless it falls outside the principled range of outcomes." *Id*. at 472. The trial court has the discretion to disallow testimony from a witness not properly listed on a witness list, but the trial court must carefully consider the circumstances of the case to determine whether such a drastic sanction is truly the most appropriate sanction. MCR 2.401(I)(2); *Duray Development LLC v Perrin*, 288 Mich App 143, 162, 164-165; 792 NW2d 749 (2010).

## IV. DR. AHMAD AS AN EXPERT WITNESS

Resolution of this appeal turns in significant part on the second issue raised by plaintiff, which we address first: whether the trial court properly excluded Dr. Ahmad from testifying as an expert witness. "The purpose of witness lists is to avoid 'trial by surprise.'" *Grubor Enterprises Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). "[T]he mere fact that a witness list was not timely filed does not, in and of itself, justify the imposition of [barring an expert witness or dismissing an action]." *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990). Conversely, the trial court's failure to ensure that the record reflects the trial court's consideration of the circumstances of the case and the alternatives available does not, in and of itself, constitute an *abuse* of its discretion, unless the record otherwise manifestly shows that

such a sanction was appropriate.  See *id*. at 33-34; see also *Duray Dev*, 288 Mich App at 165.  A nonexhaustive list of factors that should be considered includes:

> (1) whether the violation was willful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice.  [*Duray Dev*, 288 Mich App at 165, quoting *Dean*, 182 Mich App at 32-33.]

"In exercising its discretion, the trial court should [also] determine whether the party can prove the elements of its position based solely on the parties' testimony and any other documentary evidence." *Grubor Enterprises*, 201 Mich App at 629.

As an initial matter, the trial court's stated reasoning for excluding Dr. Ahmad as an expert witness is a single sentence that suggests that the trial court did not consider any circumstance of the case other than plaintiff's tardiness, although as noted, the trial court also did not impose the most drastic sanction possible.  There is no requirement that the trial court pontificate *ad nauseum*.  See MCR 2.517(A)(2).  However, we find that the trial court's statements do not rise to the level of the "[b]rief, definite, and pertinent findings and conclusions" required by the court rule.  Consequently, the resolution of this issue turns on whether the trial court's decision was so clearly proper that no other option would have been reasonable.

It is clear from the record that the trial court did in fact consider more than just plaintiff's tardiness.  The trial court permitted plaintiff the opportunity to show that in fact Dr. Ahmad *had* been indirectly or impliedly included in the witness list, but there is no evidence in the record that plaintiff was able to do so.  Defendants point out that plaintiff missed *numerous* deadlines, had in fact only filed his witness list because he was directly ordered to do so, and first disclosed Dr. Ahmad as an expert only in response to defendants' motion for summary disposition.  Plaintiff focuses on the fact that formalities notwithstanding, defendants had actually been aware of Dr. Ahmad for some considerable period of time and even voluntarily gave up their own efforts to depose him.

We find no abuse of discretion in the trial court's decision to permit plaintiff to call Dr. Ahmad as a factual witness but not as an expert.  Defendants were well aware that Dr. Ahmad was plaintiff's *treating* physician, and they had access to Dr. Ahmad's records, so they could not have been surprised by the content or relevancy of his factual testimony.  We are not persuaded by defendants' argument that plaintiff willfully flouted deadlines, but the record amply supports defendants' observation that plaintiff had missed many deadlines and the trial court had been generous in extending leeway to plaintiff.  Mere untimely disclosure of Dr. Ahmad *as an expert* would be an insufficient basis by itself to bar his testimony as an expert, but we find no abuse of discretion in finding that disclosure to be egregiously late here, rather than a mere failure to comply with a technicality, especially in light of plaintiff's other tardiness.  It was not

unreasonable for the trial court to exercise its discretion to impose the limited sanction of precluding plaintiff from utilizing Dr. Ahmad as an expert, while permitting him to testify as a fact witness, that "late in the game." The trial court's decision in this regard is not "outside the principled range of outcomes." *Herald Co*, 475 Mich at 472.

We therefore need not consider defendants' alternate asserted bases for affirming the trial court's decision.

## V. NATURE OF PLAINTIFF'S CLAIM

Plaintiff also argues on appeal that the trial court erred in concluding that his claim is a "lost opportunity" claim. We agree.

The gravamen of plaintiff's claimed injury, as set forth in the complaint, is:

¶ 98: Due to the lack of medication, Mr. Rusha's MS advanced prematurely and be [sic] began experiencing seizures and other MS symptoms including numbness, tingling, and left-sided weakness.

* * *

¶ 109: To this day, Plaintiff continues to suffer neurological deficits as a result of the progression of his MS due to the failure of the Defendants to properly treat him.

* * *

¶ 122: As a direct and proximate result of the acts of general negligence, medical negligence, gross negligence and/or wanton or reckless misconduct and/or reckless disregard for the safety of the Plaintiff, Defendants, either directly or through their agents, servants and/or employees caused Plaintiff's seizures and MS to worsen and caused pain, suffering disfigurement [sic], loss of function and disability which otherwise would not have occurred. Such acts were a significant contributing factor in causing the damages complained of thereof [sic].

Consequently, the gravamen of plaintiff's claim is that he directly suffered a concrete injury as a consequence of defendants' alleged improper care, and that injury was both symptoms of MS he suffered during his incarceration because of non-treatment and accelerated degeneration of his MS.

We note that we are baffled by defendants' conclusion that this is a "lost opportunity for a better result" claim. Both here and in the trial court, defendants simply state it baldly. We are further baffled by the trial court's unexplained adoption of that conclusion with no stated analysis or apparent consideration. In so doing, the trial court took one statement from plaintiff out of context to justify its conclusion, even though that statement was clearly made by plaintiff in response to and disputing defendants' assertion that he was advancing a "lost opportunity" claim. Courts, however, should look to the substance of a claim or transaction, not pure

superficial details. See *In re Traub Estate*, 354 Mich 263, 278-279; 92 NW2d 480 (1958); *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958).

We emphasize that we express no opinion whatsoever as to the substantive merits of plaintiff's claim. Whether or not it can be proven, plaintiff has consistently alleged that he was *actually harmed by* defendants' alleged malpractice, not that he *suffered an increased risk of harm* due to the alleged malpractice. This is precisely the critical distinction between the two theories of medical malpractice. See *Compton v Pass*, 485 Mich 920, 921; 733 NW2d 664 (2009); *Stone v Williamson*, 482 Mich 144, 151-162 (TAYLOR, C.J.), 166-171 (CAVANAGH, J); 753 NW2d 106 (2008). The only way to arrive at defendants' and the trial court's interpretation of plaintiff's claims is to conclude that past pain and suffering and/or actual degeneration in a person's physical condition are not, themselves, cognizable injuries. Such a conclusion has no basis in law. Whether or not the proofs will ultimately support it, plaintiff clearly, unambiguously, and consistently articulated a *traditional* medical malpractice action asserting that defendant's alleged malpractice directly caused him an actual injury.

Defendants argue in the alternative that plaintiff also cannot prevail under a traditional medical malpractice theory. Under the circumstances, we decline to consider that argument at this time. Rather, we conclude that the traditional medical malpractice argument is better directed at the trial court, which has the discretion, should it wish to use it, to require or permit the parties to conduct additional briefing or discovery in light of this Court's resolution of the two issues addressed above. We express no opinion as to the merits of defendants' alternate argument.

## VI. CONCLUSION

The trial court's ruling as to Dr. Ahmad is affirmed. However, the trial court's finding that this case is a "lost opportunity" case was erroneous, and therefore the trial court's grant of summary disposition is vacated. We remand this matter to the trial court for further proceedings consistent with this opinion as the trial court deems necessary or proper. We do not retain jurisdiction. No costs, neither party having prevailed in full.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause

-8-