*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF JOEL SOLOMON WEINGRAD.

---

CONSTANCE L. JONES, Personal Representative
of the ESTATE OF JOEL SOLOMON
WEINGRAD,

        Appellee,

v

PERI ROANNE WEINGRAD,

        Appellant.

UNPUBLISHED
May 11, 2023

No. 360247
Washtenaw Probate Court
LC No. 15-000890-DE

---

Before: BOONSTRA, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Appellant appeals by right the probate court's order approving the third, fourth, and fifth annual accounts and the final distributions from appellee, the estate of Joel Solomon Weingrad (the estate), and authorizing the closing of the estate. She also appeals by right the probate court's order for complete estate settlement. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Appellant is one of three surviving children of the decedent, Joel Solomon Weingard, who died intestate on June 17, 2015. In a prior appeal brought by appellant, this Court affirmed the probate court's September 25, 2018 order approving the personal representative's second annual account and authorizing the payment of claims.[1] After claims against the estate were paid, the

---

[1] See *In re Weingrad Estate*, unpublished per curiam opinion of the Court of Appeals, issued December 17, 2019 (Docket Nos. 343398; 345939). For efficiency's sake, we will not recite the

only remaining estate asset was $6,968.20 held in a bank account under the probate court's March 28, 2018 order[2] to hold back approximately $5,000 of the estate's assets to cover future expenses related to appellant's litigation concerning the estate. The estate remained under continued administration because appellant continued to file appeals related to the estate proceedings.

On October 29, 2021, the personal representative of the estate filed third, fourth, and fifth annual accounts. The third annual account, which covered the accounting period from February 12, 2018 to February 12, 2019, itemized the payments and distributions that had been paid after the probate court approved the second annual account and authorized the payments and distributions. The third account also identified remaining estate assets of $6,968.20. The fourth and fifth annual accounts, which covered the accounting periods of February 12, 2019 to February 12, 2020, and February 12, 2020 to February 12, 2021, respectively, listed no income and no expenses, losses, or other disbursements in either accounting period. The accounts identified remaining estate assets of $6,968.20.

Also on October 29, 2021, the personal representative filed a petition requesting (1) approval of the accounts, (2) approval of final distributions, (3) complete estate settlement, and (4) closing of the estate. According to the personal representative, since the second annual accounting, the estate had incurred costs and fees of $6,140 as a result of appellant's continued unsuccessful litigation that was undertaken "wrongfully and in bad faith," thereby diminishing estate assets to the detriment of the other beneficiaries. The personal representative requested that the accounts be approved and that the court make the following distributions: $1,000 to each of the other two heirs, zero to appellant, and $4,968.20 to the personal representative for fees for professional services. She also requested that the estate be closed after the distributions were made.

Despite notice of the petition and of the December 9, 2021 hearing on the petition, appellant did not appear for the hearing. No objections to the petition or to the accounts were filed. The probate court noted at the hearing that the invoice for professional services attached to the petition reflected fees in an amount greater than the amount the personal representative proposed for payment—although the invoice listed $6,140 in incurred fees, the personal representative only sought $4,968.20 in reimbursement, to permit the other two heirs to each receive a one-thousand-dollar disbursement from the estate  The probate court entered an order prepared by the personal representative that approved the third, fourth, and fifth accounts, authorized and ordered the final distributions from the estate as proposed by the personal representative, and ordered that once the final distributions were made the estate "shall be closed." The probate court also entered an order for complete estate settlement, finding that the "final account is correct and ought to be allowed." The probate court also found that the "schedule for distribution and payment of claims correctly identifies the manner in which assets remaining in the estate shall be paid and/or distributed." The order approved the final account and approved "distributions already made or as set forth in the

---

entire history of the litigation over the estate in this matter; our previous opinion contains a more detailed recitation of the underlying facts and procedural history prior to September 25, 2018.

[2] This order was also challenged in appellant's previous appeal; this Court upheld the order. See *id*.

schedule for distribution and payment of claims." Lastly, the order provided that upon filing evidence of payment of the claims and distributions, the authority of the personal representative "may be terminated and an order of discharge entered."

Appellant subsequently moved for rehearing or reconsideration of the court's December 9, 2021 orders; her challenge, in part, was based upon the personal representative's failure to use forms approved by SCAO (State Court Administrative Office) when filing accountings with or petitioning the probate court. The court denied the motion, stating in relevant part:

> Although the personal representative may not have used SCAO-approved forms for her requests for complete estate settlement, the Petition for Complete Estate Settlement and Approval of the 3rd, 4th, and 5th Annual Accounts included the information that would go on the SCAO-approved forms. The assets of the estate and the proposed distribution were explicitly stated. The payment of claims was included in the 3rd Account, which was served on the heirs. A Final Account is mooted by the complete distribution of the estate assets, as captured in the 5th Account, leaving no assets to further account for or distribute.

This appeal followed.

## II. STANDARD OF REVIEW

Appellant's arguments were raised for the first time on reconsideration, and are not preserved for our review. See *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019) (issues raised for the first time in a motion for reconsideration or rehearing are not preserved for appellate review). We therefore review them for plain error affecting appellant's substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). An error is plain if it is clear or obvious. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010). "Plain error affects a litigant's substantial rights if the party is prejudiced by the error, meaning that the error affected the outcome of the lower court proceedings." *Johnson v Mich Minority Purchasing Council*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357979); slip op at 11. Additionally, under MCR 2.613, "[a]n error . . . in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."

## III. ANALYSIS

Appellant's brief on appeal contains a statement of questions presented listing thirteen claims of error; however, appellant's claims, to the extent comprehensible by this Court, appear to challenge the proceedings that led to the probate court's orders authorizing the accountings filed by the personal representative, the distributions, and the closing of the estate, and we have grouped those arguments accordingly. Additionally, we note that a common assertion in several of appellant's arguments is that some of the petitions and orders at issue here were not prepared using mandatory SCAO-approved forms. MCL 600.855 provides: "For the sake of achieving uniformity of forms throughout this state in the probate court, effective July 1, 1979, only forms approved by the supreme court or the state court administrator shall be used." MCR 5.113(A) provides in

relevant part that "[i]f the State Court Administrative Office has approved a form for a particular purpose, it must be used when preparing that particular document for filing with the court." Therefore, to the extent a SCAO form was available and not used for a particular filing, that was error; we will therefore analyze whether the error was harmless. MCR 2.613.

## A. THE PETITION

Appellant argues that the petition for complete estate settlement was not prepared using SCAO Form PC 593, the form for complete estate settlement. She also contends that the petition prepared by the personal representative did not provide written notice that the personal representative was requesting complete estate settlement. We find any error to be harmless.

Under MCR 5.310(H), an estate being administered under supervised administration must be closed in accordance with MCL 700.3952, using the procedures specified in MCR 5.311(B)(1). MCL 700.3952(1) provides that "[a] personal representative or an interested person may petition for an order of complete estate settlement." " 'Petition' means a written request to the court for an order after notice." MCL 700.1106(q).

There is no dispute that appellant received notice of the petition prepared by the personal representative, and that this petition was not prepared using the approved SCAO form, Form PC 593. Although the personal representative did not use Form PC 593 in drafting her petition for complete estate settlement, the title of the petition prepared by the personal representative stated that the petition sought, among other things, "complete estate settlement." The body of the petition contained the same information that would have been provided on Form PC 593. The petition included the name of the personal representative, identified the interested parties, stated that all claims of creditors had been paid, stated that court-ordered distributions had been made, identified the remaining asset of the estate, and provided a schedule for the distribution of the remaining asset—$6,968.20 being held in a bank account. Appellant has failed to show that she was prejudiced by the personal representative's failure to use Form PC 593 to petition for complete estate settlement; further, she has not demonstrated that she was not given notice of the personal representative's intent to seek complete estate settlement. Any error in the failure to use the correct SCAO form was harmless. MCR 2.613.

## B. APPROVAL OF FINAL ACCOUNT

Appellant argues that the personal representative filed neither a petition for final account nor a final account of fiduciary under MCR 5.310(C)(2)(a) and, therefore, the probate court's finding in the order for complete estate settlement that "the final account is correct and ought to be allowed" should be set aside. We find any error to be harmless.

The personal representative filed third, fourth, and fifth annual accounts using SCAO Form PC 583, the form for account of fiduciary, short form. However, she did not use SCAO Form PC 585a when drafting her petition to allow the third, fourth, and fifth annual accounts. Nonetheless, the petition that was filed requested that the probate court allow the contemporaneously filed third, fourth, and fifth annual accounts, and included the information required by Form PC 585a. The third annual account indicated that the claims against the estate had been paid as ordered by the court and that the only remaining estate asset was $6,968.20 held in a bank account. The fourth

and fifth annual accounts indicated no income or expenses and continued to reflect $6,968.20 as the estate's asset. The court approved the third, fourth, and fifth annual accounts, and approved the final distribution of the assets that had been held back for future expenses, leaving no assets remaining in the estate after payment of the final distributions.

Appellant is correct that the personal representative did not file a separate, subsequent petition to allow the final account or a final account of fiduciary after the probate court approved the annual accounts. However, as the probate court stated in its order denying appellant's motion for reconsideration, "[t]he payment of claims was included in the 3rd Account, which was served on the heirs. A Final Account is mooted by the complete distribution of the estate assets, as captured in the 5th account, leaving no assets to further account for or distribute." We find no plain error in the trial court's assessment. Appellant has failed to demonstrate that she was prejudiced by the lack of an additional final account, considering all of the estate's assets had been distributed and accounted-for.

## C. SCHEDULE FOR DISTRIBUTION AND PAYMENT OF CLAIMS

Appellant also argues that the probate court erred by finding, in its order for complete estate settlement, that "[t]he schedule for distribution and payment of claims correctly identifies the manner in which assets remaining in the estate shall be paid and/or distributed." Specifically, appellant argues that the distribution and payment schedule was not prepared using SCAO Form PC 596. Appellant does not specify how she was prejudiced by the personal representative's failure to use Form PC 596. The record shows that, at the time the personal representative filed her petition, the only asset remaining in the estate was a bank account containing $6,968.20. The petition sought, among other things, approval of final distributions. The personal representative attached to the petition an itemized list of professional services provided, the fees for which totaled $6,140. She sought only partial payment of the fees and proposed a final distribution of $1,000 to each of appellant's siblings, zero to appellant,[3] and $4,968.20 to the personal representative for

---

[3] The personal representative asserted in the petition that "as in the past, all fees and costs that have been incurred since the time of her accounting and the last distributions have been incurred as a result of [appellant's] actions in the Court of Appeals and the Supreme Court." She asserted that appellant's actions had diminished the size of the estate to the detriment of the other beneficiaries and that it would be "grossly unjust and inequitable" for the other beneficiaries who declined to participate in litigation brought by appellant to be assessed costs and fees. At the hearing on the petition, the probate court noted that it had explained in its March 28, 2018 order why appellant was not getting the same distributions as her siblings and that "those same reasons continue to apply today." The court found that the personal representative "could take it all so we don't even have to find that [appellant's] not entitled to it but even if they were entitled to a thousand each, the justification for not giving [appellant] the same distribution remains in effect as in the prior orders." With respect to the prior order, the court found that it would be unjust to require the other two heirs to pay an equal share of appellate attorney fees when it was solely the actions of appellant that caused the majority of the fees in the case.

professional services, and requested that the court allow and order her to make the distributions. Contrary to appellant's argument, the probate court's finding was supported by record evidence.

## D. ESTATE TAX

Appellant also argues that the order for complete estate settlement was not well-grounded in fact. Specifically, she argues that (1) the personal representative failed to use Form PC 593 to petition for complete estate settlement, which would have allowed the personal representative to check a box in line 11 indicating either that no Michigan estate or tax was due or that it had been paid, and (2) the personal representative failed to provide the court with proof that all Michigan estate or inheritance taxes had been paid or that no estate tax was due as required by MCR 5.310(D)(2). Therefore, the probate court "lacked the evidentiary basis upon which to make a finding of fact . . . of the personal representative's full performance of her affirmative duty to pay taxes." We disagree that any plain error occurred, and any error that did occur was harmless.

A review of the record shows that no interested parties raised the issue of estate taxes in these proceedings, and the probate court did not make a finding of fact regarding estate taxes. The court did not check either box in Line 6 of Form PC 595 with respect to Michigan estate or inheritance tax. In other words, the probate court did not make an allegedly incorrect finding; it simply made no finding. In any event, MCR 5.310(D)(2) provides as follows:

> With respect to the case of an estate of a decedent dying after September 30, 1993, subsection (2) provides that the personal representative must file with the court:
>
> (a) if a federal estate tax return was required to be filed for the decedent, proof from the Michigan Department of Treasury that all Michigan estate taxes have been paid, or
>
> (b) if no federal estate tax return was required to be filed for the decedent, a statement that no Michigan estate tax is due.

The filing threshold for federal estate tax in 2015, the year of the decedent's death, was $5,430,000. The record clearly reflects that a federal tax return was not required to be filed for the decedent. See <https://www.irs.gov/businesses/small-businesses-self-employed/estate-tax> (accessed March 16, 2023). Therefore, to the extent that the personal representative failed to comply with MCR 5.310(D)(2), the error was a simple failure to file a statement that the estate did not owe any Michigan estate taxes. Appellant has not demonstrated that she suffered any prejudice by the personal representative's alleged failure to "make the showing required by law of her full performance of the duty to pay taxes," or by the probate court's settlement of the estate under the circumstances of this case, where a federal estate tax return was not required to be filed for the decedent and no Michigan estate tax was due.

## E. INVENTORY FEES

Appellant also argues that the annual accounts filed by the personal representative failed to show inventory fees paid to the probate court and that the probate court therefore erred by approving the accounts. We disagree.

MCL 600.871 governs the probate court's charging and collection of fees from the decedent's estate as an expense of administration on the value of assets. MCL 600.871(2) provides: "Beginning March 28, 2013, in calculating a fee under subsection (1), if real property that is included in the estate is encumbered or used as security for an indebtedness, the amount of the indebtedness must be deducted from the value of the real property." The personal representative filed an inventory that listed the real property as the sole property of the estate. The fair market value of the property was listed at $564,500, with liens totaling $564,500. Under these circumstances, the estate's assets were valued at zero, and no fees would be collected pursuant to MCL 600.871(2). Appellant has produced no evidence indicating that any inventory fees were paid to the probate court, and has failed to demonstrate any error.

## F. FINAL DISTRIBUTIONS

Appellant also argues that the personal representative failed to file a document stating that any properly-presented claims against the estate had been paid, settled, or disposed of. Contrary to appellant's contention, the petition contained the same information that would have been provided in Form PC 596, and specifically contained a statement that all creditors of the estate had been paid, a statement that the distributions ordered by the court when approving the second annual account had been made and were listed on the third annual account filed contemporaneously with the petition, and the proposed distribution for the remaining assets of the estate. The petition also included an attached itemized list of fiduciary and legal services in support of the claim for fees. Appellant has failed to demonstrate any error.

## G. ORDER OF DISCHARGE

In the order for complete estate settlement, the probate court checked the box in line 18, which ordered that "[u]pon filing evidence of payment of the claims and distributions set forth above (if any), the authority of the personal representative may be terminated and an order of discharge entered." Appellant appears to challenge this portion of the order on appeal; however, her argument is incomprehensible to this Court. Appellant has not shown plain error and we consider this issue abandoned. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *Airgas Specialty Products v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530 (2021).

## H. FIDUCIARY AND ATTORNEY FEES

Appellant also challenges the portion of the probate court's order authorizing payment of $4,868.20 to the personal representative for fiduciary and legal services. She contends that the record does not reflect that all of the interested parties consented to the payment of the attorney fees, that the personal representative was therefore required to "append a statement containing the information required by MCR 5.313(C)" and that, without the information, the court "lost the basis for its jurisdiction." We disagree.

MCR 5.310(C)(2)(c) provides in part. with respect to accountings filed with the court, that "[a] written description of services performed must be included or appended regarding compensation sought by a personal representative." MCR 5.313(C) provides with respect to

attorney compensation: "Regardless of the fee agreement, every attorney who represents a personal representative must maintain time records for services that must reflect the following information: the identity of the person performing the services, the date the services are performed, the amount of time expended in performing the services, and a brief description of the services." And MCR 5.313(F) provides that "[e]xcept when the compensation is consented to by all the parties affected, the personal representative must append to an accounting, petition, or motion in which compensation is claimed a statement containing the information required by subrule (C)."

In this case, the personal representative attached to the petition an invoice detailing the professional services provided, including the date of each service, a description of the service, the time spent, the hourly rate, and the total amount for each service. The invoice satisfied the requirements of MCR 5.313(C). The invoice also indicated which services were performed as personal representative and which were performed as an attorney representing the estate. Consequently, the factual premise of appellant's argument is misplaced. Appellant has failed to demonstrate plain error.[4]

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Christopher P. Yates

---

[4] We also note that there is no indication in the record that an interested party requested a review of the reasonableness of the services, and no interested party responded to the petition containing the invoice and the proposed payment of fees. The invoice reflected services totaling $6,140, the majority of which were for legal services necessitated by appellant's appeals to this Court and to the Supreme Court, yet the personal representative requested only partial fees in the amount of $4,968.20. The court's comment to the personal representative at the hearing that the invoice reflected professional service fees in an amount greater than the amount of fees requested and that she "could take the extra $2,000 to pay toward her fees" indicates that the court believed that $6,140 would have been reasonable compensation.