*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDY SAMUEL COMBS,

       Plaintiff-Appellee,

v

SHARON ELIZABETH COMBS,

       Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 362861
Oakland Circuit Court
Family Division
LC No. 2021-507361-DO

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this divorce action, defendant appeals as of right the trial court's judgment of divorce distributing the parties' marital property. We affirm.

## I. BACKGROUND

This case arises from a divorce between plaintiff (husband) and defendant (wife). The parties were married for 44 years. Plaintiff filed for divorce in June 2021. Before trial, both parties were instructed to file their respective witness lists one week before the close of discovery. Neither party timely filed their witness lists. Plaintiff filed his witness list 13 days before the start of trial, and defendant filed hers 7 days before trial. Due to their untimely filings, the court struck both parties' witness lists and ordered that each party may only call themselves as a witness at trial.

The trial was held in March 2022. Plaintiff worked at General Motors for 38 years. When the parties first married, defendant worked as a clerk at General Motors; however, when she got pregnant with the parties' first child, she left work and stayed home to maintain the marital home and care for the children. She remained unemployed throughout the remainder of the marriage. Plaintiff testified he supported his family on his General Motors income and "never" hesitated to use all of his income to care for his family. Plaintiff is currently retired and receives $3,105 per month from his General Motors pension.

During the parties' marriage, plaintiff inherited between $150,000 and $200,000 in liquid assets from his father, as well as his father's farm and two other parcels of real property. Plaintiff

-1-

testified he used $50,000 of his inheritance to put a down payment on the marital house, and the remaining funds were put into bank accounts. During the marriage, the parties sold the two other parcels of land from plaintiff's inheritance, and the funds from those sales were comingled into the marital estate.

Toward the end of the marriage, defendant's father was ill and left defendant a sizable inheritance in the form of a trust upon his passing. The trust included liquid assets and the father's home in Florida. Plaintiff stated that defendant's imminent inheritance from her father was a factor in his decision to retire. Plaintiff testified that he and defendant had "many" discussions about her future inheritance over the course of their marriage. Plaintiff estimated that the parties discussed sharing the inheritance at least "thirty" times and that it was a frequent topic of discussion between them.

Defendant confirmed that, in addition to the liquid assets of her father's trust, her inheritance also included her father's condominium in Florida. The condominium was sold before trial, and defendant was entitled to approximately $630,000, which represented her half of the proceeds. Defendant testified she had yet to receive the funds from the condominium sale. Additionally, defendant received a check for $290,000 from the sale of her father's house in Michigan but had not yet deposited it. Defendant deposited the distributions from her father's trust into her own separate bank account. Defendant also stated that she and plaintiff never discussed her inheritance or made any kind of agreement concerning the inheritance. Likewise, defendant testified she never intended to use her inheritance as a retirement fund for her and plaintiff. Regarding plaintiff's pension, defendant did not know whether the pension included a spousal benefit. When asked by counsel if she wanted to receive half of plaintiff's pension, defendant responded, "No."

Relevant to this appeal, plaintiff argued at the close of trial that defendant's inheritance should be considered marital property because both parties intended for defendant's inheritance to become a marital asset. Additionally, plaintiff maintained that he comingled his separate inheritance into the marital estate to support the marriage based on defendant's representations concerning her inheritance. Regarding his pension, plaintiff argued that he should receive his pension in full in lieu of spousal support. In turn, defendant argued she never planned to share her inheritance with plaintiff, nor did she share her inheritance money with plaintiff or allow him to manage it. Thus, defendant maintained she did not comingle her inheritance, and plaintiff is not entitled to receive any distribution of the trust. Regarding plaintiff's pension, defendant stated plaintiff should receive the pension "only if this [c]ourt equally divides the remaining assets and awards [defendant] all of her separate property without any award of spousal support to [plaintiff]."

In June 2022, the trial court issued its opinion and order outlining the distribution of the parties' marital property. Relevantly, the court concluded defendant's interest in her father's trust was included in the marital estate and available for equitable distribution. The court found plaintiff largely generated an income to support the family and, on top of his marital labor, also comingled his inheritance into the marital estate and relationship. The court found highly credible plaintiff's testimony that, throughout the marriage, he and defendant often discussed using defendant's inheritance to support themselves in retirement. The court also "found credible [plaintiff's] representations that he comingled his substantial inheritance into the marital estate for the purposes of supporting it (and [defendant]), lived 'paycheck to paycheck' nonetheless, and planned to use

[defendant's] inheritance as similar support when it arrived." In contrast, the court did not find defendant's representations credible. Ultimately, the court concluded that excluding defendant's inheritance from her father's trust from the marital estate "would not leave a sufficient amount of assets to equitably compensate [plaintiff] for his efforts in light of [defendant's] representations." Thus, the court included defendant's $630,000 proceeds from the sale of her father's Florida condominium, defendant's uncashed check of $290,000 from the sale of her father's Michigan home, and defendant's portion of the remainder of the trust (valued at $3,312,500)[1] in the marital estate.

Regarding the distribution of the marital property, as is relevant, the court awarded plaintiff his pension "as his sole property subject to any spousal elections [plaintiff] previously made on the policy." But the court did not list a value for the pension on its asset sheet attached to the opinion and order. The parties were each awarded a one-half interest in the $630,000 from the Florida condominium sale and the $290,000 uncashed check for the Michigan home sale.[2] Defendant was awarded 100% of the remaining assets of her father's trust. Plaintiff was awarded the marital home, the farm he inherited from his father, his bank account, a truck he inherited from his father,[3] a pontoon boat, and his defunct business. The parties were also each awarded a one-half interest in several different bank accounts.[4] Plaintiff's total award, after deducting liabilities for credit card debt and tax debt, was $998,061.25, which did not include the value of his pension. Defendant's total award was $4,301,885.25, which included the remaining assets of the trust and money from several of her checking and savings accounts.

## II. DISTRIBUTION OF PROPERTY

We "review[] a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Butler v Simmons-Butler*, 308 Mich App 195, 207-208; 863 NW2d 677 (2014). A court's finding is clearly erroneous if we are "left with the definite and firm conviction that a mistake was made." *Id*. at 208. We will affirm a court's discretionary dispositional ruling unless we are "left with a firm conviction that the division was inequitable." *Id*.

---

[1] The court adopted plaintiff's valuation of the trust, as opposed to defendant's $6,625,000 valuation.

[2] Plaintiff's interest in the uncashed check, and a portion of his interest in the $630,000 were applied to offset the value of defendant's one-half interest in the marital home and her one-half interest in the farm plaintiff inherited from his father.

[3] The parties were also each awarded their leased vehicles.

[4] After accounting for all of the offsets for property received by the parties, plaintiff was ultimately awarded $174,590.25 from defendant's checking account.

## A. DEFENDANT'S INHERITANCE

Defendant argues the trial court erred when it included the trust in the marital estate and considered it in the division of the estate because the trust is defendant's separate property and not part of the marital estate. We disagree.

Generally, "an inheritance received by one spouse during the marriage and kept separate from marital property is separate property." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). However, "separate assets may lose their character as separate property and transform into marital property if they are comingled with marital assets and treated by the parties as marital property." *Id*. (cleaned up). The fact that property "may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id*. at 201-202. Further, separate property may be included in the remainder of a marital estate if "the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party . . . ." *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997) (cleaned up). Thus, the invasion of separate property is proper when the "division of the marital assets alone would have been insufficient for suitable support in the manner to which the [parties] were accustomed." *Id*.

In *Demman v Demman*, 195 Mich App 109, 112; 489 NW2d 161 (1992), the defendant argued that the trial court erred in determining that his inheritance was a marital asset because the first distribution of assets came after the plaintiff filed for divorce. This Court concluded that, even though the assets of the inheritance were not distributed before the divorce, the trial court did not err because the inclusion of the inheritance was necessary to maintain the plaintiff and make an equitable distribution of property. *Id*. at 113.

In this case, plaintiff testified that the parties had planned their retirement around the funds from defendant's inheritance that she was set to receive from her father's trust. Because of this assurance from defendant, plaintiff spent his previously received inheritance and his income throughout the marriage to enrich the marital estate. Concerning defendant's testimony that she did not plan with plaintiff to use the trust funds for their retirement, we "accord special deference to a trial court's factual findings that were based on witness credibility." *Woodington v Shokoohi*, 288 Mich App 352, 358; 792 NW2d 63 (2010). Here, the trial court explicitly found that plaintiff's testimony concerning the inheritance was credible and that defendant's testimony was not credible. The court "did not find credible [defendant's] testimony that the parties never discussed the usage of [her] inheritance," nor did the court find credible her "representations that the parties never discussed the subject during their marriage or failed to reach an agreement on it." Further, the trial court made a finding that plaintiff had commingled his previously received inheritance into the relationship and marital estate based on his testimony at trial. Because the parties discussed the trust as being marital property many times throughout their marriage and intended to use the trust for their retirement, we conclude the trial court did not err when it included defendant's inheritance in the marital estate.

Additionally, even if the trust were separate property, when the division of marital property "would [be] insufficient for suitable support in the manner to which the [parties] were accustomed," the inclusion of the separate property in the marital estate is proper. *Reeves*, 226 Mich App at 494. Here, the trial court explicitly found that "[e]xcluding the trust from the marital

estate would not leave a sufficient amount of assets to equitably compensate [plaintiff] for his efforts in light of [defendant's] representations." Considering the disparity of assets between the parties and the lifestyle the parties were accustomed to, we are not left with a definite and firm conviction that the trial court erred in finding that the inclusion of the trust in the marital estate was necessary to compensate plaintiff. Thus, the trial court properly assessed plaintiff's needs and appropriately considered defendant's inheritance in the distribution of property. Therefore, the trial court did not clearly err when it determined defendant's inheritance was marital property subject to distribution.

Concerning the inclusion of the trust assets in the distribution of the marital estate, the trial court must consider the following factors in determining an equitable distribution of property in a divorce proceeding:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Cassidy v Cassidy*, 318 Mich App 463, 477; 899 NW2d 65 (2017) (cleaned up).]

Further, "this Court defers to a trial court's findings of fact stemming from credibility determinations." *Id*.

In this case, the trial court explicitly considered all nine factors in its opinion after the trial. Considering that the parties were married for over four decades, plaintiff contributed the majority of financial resources to the marital estate in the form of his employment and separate inheritance, both parties have minimal future earning ability due to their advanced ages, plaintiff relied on defendant's representations concerning her inheritance, and plaintiff comingled his significant separate inheritance to "keep the family afloat" during the marriage, the trial concluded that equity requires that plaintiff receive a fair distribution of the marital assets. Thus, the trial court properly assessed all relevant factors concerning the inclusion of defendant's inheritance as marital property. Finding no clear error in the court's factual findings, we conclude the dispositional ruling was fair and equitable in light of these facts. Therefore, the trial court did not clearly err when it found that defendant's inheritance from her father's trust was marital property to be considered in distributing the marital estate.

### B. PLAINTIFF'S PENSION

Defendant argues the trial court erred when it failed to value plaintiff's pension or award defendant any value to offset the value of the pension awarded to plaintiff. We disagree.

Generally, "[p]ensions are considered part of the marital estate subject to award upon divorce." *Magee v Magee*, 218 Mich App 158, 164; 553 NW2d 363 (1996). However, "the party seeking to include a pension for distribution in the property settlement bears the burden of proving the reasonably ascertainable value of the pension." *Id*. at 165. " When dividing a marital estate, the goal is to reach an equitable distribution in light of all the circumstances. *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). Because the trial court is given broad discretion concerning the division of property in a divorce, "there can be no strict mathematical

formulations." *Sparks v Sparks*, 440 Mich 141, 158-159; 485 NW2d 893 (1992). "While the division [of property] need not be equal, it must be equitable." *Id*. Therefore, to determine if a potential distribution of property is fair or equitable, it follows that the value of the property at issue be known. See *Woodington*, 288 Mich at 366-367.

On appeal, defendant concedes she did not assign any value to the pension but maintains it "certainly has some value" because, as the evidence reflected at trial, plaintiff receives a gross monthly payment of approximately $4,504 from the pension, totaling $54,053.64 annually. The trial court noted that plaintiff received $1,030,762.25 in assets against $32,701 in liabilities, which was independent of his pension and social security amounts he received on a monthly basis. Similarly, defendant received $1,020,329.25 in liquid assets against $30,944 in total liabilities, which did not include the remaining $3,312,500 in trust assets. Taking this division of the marital estate into consideration, the court concluded that it would not be equitable to invade the remaining $3,312,500 in trust assets to make a distribution to plaintiff because "[t]he reality is that [defendant] will have no residence one month after this opinion's date—unless the parties agree otherwise and she will need to reestablish herself." The trial court clearly balanced the equities in distributing the marital estate. We are not left with a definite and firm conviction that the property division was unfair or inequitable.

## III. EXCLUSION OF WITNESSES AT TRIAL

Defendant argues the trial court abused its discretion when it barred her from calling any witnesses to testify at trial other than herself. We disagree.

We "review[] for an abuse of discretion a trial court's decision to bar witness testimony after a party has failed to timely submit a witness list. An abuse of discretion exists when the trial court's decision falls outside the range of principled outcomes." *Duray Dev, LLC v Perrin*, 288 Mich App 143, 162; 792 NW2d 749 (2010).

Under MCR 2.401(I)(1), "no later than the time directed by the court . . . the parties shall file and serve witness lists." "The court may order that any witness not listed in accordance with [MCR 2.401(I)(1)] will be prohibited from testifying at trial except upon good cause shown." MCR 2.401(I)(2). In this case, the trial court entered a scheduling order requiring the parties to submit their witness lists no later than a week before the close of discovery. Defendant concedes in her brief on appeal that she did not provide a witness list within that time.

If a party fails to timely file a witness list, the court may exercise its discretion to impose sanctions against the party, including barring a party from calling witnesses. See *Duray Dev*, 288 Mich App at 164. The trial court must "consider the circumstances of each case to determine if such a drastic sanction is appropriate." *Id*. at 164-165 (cleaned up). A nonexhaustive list of relevant factors a court may consider in its determination include:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the

degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice. [*Id*. at 165 (cleaned up).]

In this case, the trial court struck both defendant's and plaintiff's witness lists for being untimely. The court determined both parties had ample notice to file their respective witness lists and that both parties had failed to so do by the imposed deadline. Defendant filed her witness list seven days before trial was set to begin, which disadvantaged plaintiff. Likewise, plaintiff's filing of his witness list only 13 days before trial disadvantaged defendant. Due to the parties' willful failures to timely file their respective witness lists, the considerable time each party had to comply with the deadline, and the prejudice each party would face with trial imminent, the court barred both parties from calling witnesses at trial other than themselves.

Defendant argues the court's order barring her witness list was a drastic and extreme remedy. We disagree. "Witness lists are an element of discovery." *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993). "The ultimate objective of pretrial discovery is to make available to all parties, in advance of trial, all relevant facts which might be admitted into evidence at trial." *Id*. "The purpose of witness lists is to avoid trial by surprise." *Id*. (cleaned up). In this case, the trial court barred both parties from calling witnesses at trial after giving careful consideration to the relevant factors.

Defendant contends that her delay in filing her witness list was not willful; instead, she argues the delay was due to her changing counsel during the proceedings. We are not convinced. The trial court issued its scheduling order on September 23, 2021, which required both parties to file their witness lists by December 6, 2021. Defendant had over two months to file her witness list with the court. Her first trial counsel did not file a motion to withdraw as counsel until January 4, 2022, which was almost a full month after the witness list was due to be filed. At the time of the witness list filing deadline, defendant still had active counsel (who had had multiple months' notice of the impending deadline). Further, even after defendant retained new counsel on February 1, 2022, her new counsel did not file a witness list until almost two months later at the end of March 2022. Defendant filed her witness list over 3½ months beyond the court's filing deadline. We conclude defendant's change of trial counsel in January 2022 did not affect her ability or opportunity to timely file her witness list at the beginning of December 2021.

The trial court also determined that the parties would both be prejudiced by the late disclosure of witnesses just before trial. Each party's witness list included witnesses that were not listed on the opposing party's list. Neither party had an opportunity to conduct pertinent discovery of the newly-disclosed witnesses or sufficient notice to prepare for their testimony.

In addition, defendant had a history of failing to comply with discovery requests and other provisions of the court's scheduling order. During discovery, defendant failed to timely respond to plaintiff's first interrogatories and request for production of documents. Defendant also failed to exchange exhibits with opposing counsel three weeks in advance of trial, as was required by the scheduling hearing. This history of dilatoriness was a relevant factor in the trial court's determination.

Considering the circumstances of the case and the fact plaintiff was equally barred from presenting witnesses at trial, we conclude the trial court did not abuse its discretion by prohibiting defendant from presenting witnesses at trial beyond her own testimony.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel